## ANONYMOUS.

*New York Superior Court; Special Term, Feb.*, 1856.

ATTORNEY AND CLIENT.—ILLEGAL CONTRACT.—TRANSFER IN FRAUD OF THE LAW.

A merely colorable transfer of a thing in action for the purpose of ostensibly disconnecting the real party in interest, and of prosecuting an action on it in the name of one who has no interest, is fraudulent and illegal; and unless there is something in the relation of the parties to the transfer to take the case out of the general rule, the court will neither enforce it, nor restore the parties.

The same rule should be applied though the assignor acted in the transaction by an agent. But where such a transfer is shown to have been procured by the assignee while acting as attorney for the assignor, and by advice given in that capacity, and for the purpose of suing in his own name, equity requires that it should not be enforced, or if it has been executed, that it should be rescinded on the application of the client. *

---

* Compare Ford *a.* Harrington (16 *N. Y.*, 285), which is to similar effect.

The provision of the Code of Procedure, which leaves the compensation of attorneys to be fixed by agreement with the client, does not alter the rules as to the validity of purchases by attorneys from their clients.

Trial by the court, of an action brought to set aside an assignment made by the plaintiff to the defendant his attorney.

The facts appear sufficiently in the opinion.

*Mr. Jordan*, for the plaintiff.

*Mr. Brady*, for the defendant.

HOFFMAN, J.—It is of peculiar importance in this cause carefully to analyze the complaint, and fully to understand the position of the plaintiff upon it; and this analysis must be made in relation to two branches of the cause. 1st. As to the transaction respecting the *Bacon* claim; and 2d. That regarding the *Ware* judgment.

I. The allegation of the complaint is, that on the 25th of March, 1853, the plaintiff had a valid claim against one Bacon, for the sum of $8,500; and directed the defendant to commence an action for the recovery of the same. That the defendant fraudulently advised the agent of the plaintiff that it was proper and necessary to disconnect the plaintiff ostensibly from the demand; and for that purpose, an assignment should be made to him the defendant. That under this advice, and from the influence of the confidential relation of attorney and client between them, an assignment was made of the claim, in consideration of one dollar; but no consideration was ever paid. Such assignment was made by the agent of the plaintiff. That the defendant then commenced an action upon the claim, in which a reference was ordered. That while such reference was pending, the defendant represented that, to carry out the scheme effectually, it was necessary that a consideration should be paid, and that he would actually advance some money, and enter into some pretended arrangement as to paying the balance of the consideration. That for this colorable purpose, and without any intention to make an assignment of the demand, the plaintiff's agent received from him $500, and signed a receipt for that sum, drawn up by defendant. That receipt expressed, besides the acknowledgment of the payment, that

such sum was to be repaid if the Bacon claim was not collected; but if collected, the defendant was to pay nine hundred dollars, more.

That subsequently, more fully to effect the fraudulent design, the defendant urged an assignment direct from the plaintiff. That this was accordingly drawn up by the defendant, and was executed by the plaintiff, confiding in the representations, and influenced by the relation between them, without any intention to transfer the demand; and that the same was colorably and fraudulently obtained from him. The complaint then states a recovery by the defendant of a judgment against Bacon for about $8.345 01; and that the defendant has actually received about $8.300 upon the same. Judgment for this sum (as well as upon another demand) is asked in the complaint.

In order to understand the first and highly important point, it is necessary to notice one piece of testimony in connection with the complaint. The person who was the agent of the plaintiff in the whole of these transactions, was examined before the referee as a witness, and, according to his own present statement, gave evidence to sustain the claim of the defendant, —knowing that he had not any claim whatever, and being advised that it was a mere scheme for the better securing the demand in suit. It is not open to denial, that he did not tell the whole truth before the referee. It is indisputable that his evidence led to the conclusion of the referee that the defendant was the owner. It is certain that he now states that defendant had no such ownership.

I do not advert at present to any contrast of his testimony with the evidence given by other witnesses in the present suit. I notice it as bearing upon the first point to be examined upon his own allegations, and upon those merely.

It is not to be contested, that the case thus presented, is a case of fraud; a fraud practised upon the referee—upon the defendant Bacon—and upon the law, embodied in the Code. The plaintiff is responsible for the acts and statements of his agent throughout the transaction. The agent was to be the witness. He was the witness. By his consent, a fictitious plaintiff was placed before the court; and that imposition was supported by his oath, through the whole struggle in the cause. He now comes, stained with this illegal design, successfully

accomplished by these statements, to sustain an action, the success of which must rest upon his immoral and illegal conni- vance in a fraud, if it does not involve him in perjury.

I may refer to the language in which eminent judges have characterized actions resting upon similar violations of public or municipal law, or of sound morality and justice. Chief-justice Wilmot, in repudiating a suit upon a bond given upon compounding a prosecution for perjury, says: "It is void by the common law; and the reason why the common law says such contracts are void, is the public good. You shall not stipulate for iniquity. All writers upon the law agree in this, that no polluted hand shall touch the pure fountains of justice." (2 *Wils.*, 350.) Chancellor Kent, says: "There is to my mind something monstrous in the proposition, that a court of law ought to carry into effect a contract founded on a breach of law; it is encouraging disobedience, and giving to disloyalty its unhallowed fruits." (16 *Johns.*, 486.) Chancellor Sandford expresses himself thus: "Illegal contracts are not enforced by the laws of the country, whose laws they violate or evade. A system destitute of such a principle, would be inconsistent with itself; and the regulations of society would be easily frustrated, if men were at liberty to contravene them by compact, and to claim the faith of contracts, when violating the laws of their country." (*Hopk.*, 26.)

"No issue can be formed in relation to frauds and simulations between the parties implicated in them, which a tribunal of justice ought to try," is the language of the court of Louisiana. (1 *Louis. Ann. R.*, 69.) "If a contract is illegal, or opposed to public policy, and is executed in whole or in part, and the parties are equally guilty, neither a court of law nor of equity will interpose to give relief to either," is the expression of the rule in Georgia. (5 *Georg. R.*, 404.) And the Supreme Court of Vermont, declares: "If we treat this transaction as void, by reason of its illegality, as involving a breach of trust, and therefore forbidden by the policy of the law, it falls within the general rule,—that the court will neither enforce it while executory, nor rescind it when executed." (10 *Vermont*, 344.)

I might, indeed, explore the records of every court at West-minster for centuries, and of every tribunal of the United States, and would find one universal repetition and sanction of the

principle thus stated. I refer but to one class of cases as an example. Deeds executed to entitle a party to a seat in Parliament, or to qualify him within the Game laws, cannot be rescinded. A suit in equity to compel a surrender will not be sustained.

The leading cases are Roberts *a.* Roberts (*Daniel's R.*, 143), and Brackenbury *a.* Brackenbury (2 *Jac. & W.*, 391). The latter case is, it is true, but a strong expression of Lord Eldon's opinion, and not an express decision, which the facts, as presented, did not warrant; but a strong expression of Lord Eldon is quite close to a decision. The latter case, with a decision in the court of King's Bench in the note, is clear to the point that a deed for such a purpose will be available. The party cannot ask a court of equity to set it aside, nor resist its legal force in a court of law on the ground of its illegality.

It is needless to enter upon the cases taking the distinction between contracts executed and executory; or upon the question, as to which judges have differed widely, whether a high morality is best answered by a reinstatement of the parties to an illegal transaction in their former position, or by an entire inactivity, and a rigorous refusal of courts of justice to interpose at all. I may confidently assert, that the present case is one, which would fall within the rule prescribing inactivity, unless the relations of the parties create an exception.

That such exceptions exist, even in cases of perfected contracts, is recognized by Lord Mansfield in Smith *a.* Bromley (*Douglass*, 696, n. 3); by Lord Langdale in Simson *a.* Lord Howden (1 *Keen's R.*, 597); and by the Supreme Court of Vermont in Dixon *a.* Olmstead (9 *Verm.*, 316); and in many other decisions, which it would be superfluous to enumerate.

The present case forms, in my opinion, another exception. Upon the theory of the plaintiff, the defendant was as culpable as himself, or more so. The defendant was an attorney counselling and aiding, according to the plaintiff's assertions, the violation of law and truth; suggesting the scheme, and guiding its execution. It was done to promote success in a cause in which he was to be the party on the record—uniting a control as plaintiff with the influence as attorney; and it was done after the relation of attorney and client had been constituted.

A court of equity has long held, that this relation admitted

of so much influence, of such an abuse of confidence, and so great an opportunity for extortion, as placed the client in a state of pupilage, and the attorney in the position of a guardian. Hence a gift or transfer of property—especially the property in litigation—from a client, is presumptively nugatory and void. It will not be enforced on the application of the attorney, and will be cancelled, on equitable terms, on the demand of the client.

I need not go over the multitude of cases, the cloud of witnesses to the prevalence of the great principle thus adopted and sustained. We may trace it from the case in the Year Book, in the reign of Henry VII. (cited in Wood *a.* Downes, 18 *Ves.*, 120), to that of Carter *q.* Palmer in 1839 (1 *Drury & Walsh*, 722). I have formerly examined the leading authorities in the two cases cited by counsel,—Berrien *a.* McLane (*Hoffm.*, 410) and Howell *a.* Ransom (1 *N. Y. Leg. Obs.*, 10 ; affirmed, 11 *Paige*, 538). I find no reason to change the conclusions there stated.

A court of chancery thus framed a system for the government of contracts and transfers between advocates and clients, distinct from the general law, and marked by a peculiar and high-toned rigor of equity. It was adopted, not merely to shelter the confiding from deception, but also to sustain the reputation, and therefore to advance the truest interests of the profession. It was to render duty and benefit one and the same. It was the offspring of a paternal, as well as a resolute justice. It was, to borrow the eloquence of Mr. Grattan, " guarded by settled maxims of honor, as well as by wholesome rules of law. It was felt that to tolerate would be to embrace, and that it must be kept unsullied, uncovenanted, and uncircumscribed ; that the paths which it pointed to were the paths of honor, and the ways in which it led were the ways of peace." *

I consider that the rule I have adverted to is justly to be extended, so as to forbid the defendant from alleging that in the plaintiff's case there is such a delinquency in him as to make a bar to this action. It then results, that assuming the case of the complaint to have been fully established, and assuming the

---

* Speech on Orde's Commercial Propositions.

concert of the parties in the alleged illegal design to have been made out, the action may still be sustained.

II. This leads to the question, Are the allegations of the complaint supported? They are not, if the agent is not to be considered a credible witness. This is the next, and important question. To deny and overthrow, or to support him, has been the great struggle in the cause.

The judge then analyzed the testimony, and continued as follows:

This examination compels me to discard the testimony of the agent from the case, and to decide it upon the pleadings, admissions, and undisputed evidence.

The allegations of fraud in the complaint are therefore wholly unsupported, and the rights of the parties are to be decided upon the admitted facts. The answer itself furnishes the ground for determining that the transfer of the Bacon claim cannot be sustained as an absolute purchase, but should stand as a security; or rather the proceeds recovered are to be accounted for upon a regular adjustment of accounts. The rule and authorities to which I have before referred inevitably lead me to this conclusion.

I may, however, notice the late case of Tomson a. Judge (3 Drew's R., 306; London Law Mag., Feb., 1852). Vice-chancellor Kinderly said: "There was no rule of the court prohibiting a purchase of the client's property. It might be done even while the relation subsisted; but such purchases are to be viewed with great jealousy, and the onus was on the solicitor to show that the transaction was perfectly fair, that the client knew what he was doing, and, in particular, a fair price was given."

The case appeared on the evidence to be one of a gift, and the court adverted to the distinction between gifts and purchases. As to the former, the court holds them absolutely void. As to the latter the rule is modified and less rigid. The case turned upon the establishment of the relation of client and counsel, which was made out.

It does not appear that the property given was the property in suit.

Counsel have referred to the Code, and the change which it

has perfected in permitting bargains for services between advocate and client. Whatever may. be the extent of this provision, and the alteration it has produced in the former law, it does not, in my judgment, either in letter or spirit, apply to the case of a purchase ·by an attorney of the property of his client, the subject of litigation.

The judge then, in conclusion, stated the main points of the account to be settled.