HOWELL and others, executors, &c. *vs.* RANSOM and JOHNSON.

Where an attorney obtains from his client the assignment of a judgment, for a consideration so grossly inadequate that the client would not probably have made the assignment, if he had been fully informed of the facts which his attorney ought to have ascertained and communicated to him, the assignment will be set aside, as constructively fraudulent. And it is not necessary for the client, in such a case, to prove actual fraud on the part of the attorney.

Even if the court is not bound, as a matter of course, to set aside a sale, by a client to his attorney, of the subject matter of the litigation, the burden of establishing the fairness of the sale, and that it was made upon a full and adequate consideration, is cast upon the attorney.

An attorney cannot sustain a purchase from his client, without showing that he communicated to such client every thing necessary to enable him to form a correct judgment as to the real value of the subject of the purchase, and as to the propriety of selling for the price offered. And the neglect of the attorney to inform himself of the true state of the facts, will not enable him to sustain a purchase, from his client, for an inadequate consideration.

THIS was an appeal by the defendant A. G. Ransom, from a decree of the late assistant vice chancellor of the first circuit. The complainants, who resided in Orange county, were the executors of I. W. Tuthill deceased, and as such, held two leases against O. Wheaton, of Broome county, upon one of which leases there was due to their testator about $700, and upon the other about $100. The complainants placed these demands in the hands of Ransom, who was an attorney living in Chenango county, and not far from the residence of Wheaton, for collection. Ransom brought a suit upon one of the leases, and in January term, 1832, he recovered a judgment thereon, against Wheaton, in the supreme court, for $701,77, besides costs. At the time of the recovery of this judgment, Wheaton resided on, and was the owner of, a farm in Broome county, worth about $3000; the conveyance of which farm to him was duly and regularly recorded in the clerk's office of that county, in May, 1829. He was also the owner of considerable stock and other personal property on such farm; but no execution was issued upon the judgment until after the assignment thereof, as hereafter mentioned. Wheaton was reputed to be a slippery and trickish fellow, and for some years previous to May, 1829, had his property covered up, and had held the title to the farm in the name of another person. In January, 1833, the defendant Ransom, being in Orange county, purchased the judgment and the amount due upon the other lease, in the name of the defendant Johnson, his father-in-law, but in fact for his own benefit, for the sum of $75; and took an assignment thereof, in the name of Johnson. In May, 1833, an execution was issued upon the judgment, and was levied upon the personal property of Wheaton on his farm; and Wheaton subsequently paid the whole amount of the judgment, and the costs of the suit, to the defendant Ransom. The bill in this cause was afterwards filed, by the complainants, at the request of those who were interested in the estate of Tuthill, to set aside the sale and assignment to Johnson for the benefit of Ransom, and to compel the latter to pay to them the full amount collected upon the judgment, exclusive of the costs. An answer on oath from the defendants was waived. And the defendants

having put in their answers without oath, a replication was filed thereto, and the cause was heard before the assistant vice chancellor, upon pleadings and proofs. He directed the bill to be dismissed as to the defendant Johnson ; who disclaimed any interest in the assignment, and who had received no part of the moneys collected of Wheaton. But he set aside the assignment, and decreed the defendant Ransom to pay to the complainants the amount collected upon the judgment, exclusive of the costs, and of the $75 paid upon the assignment ; together with the costs of this suit.

*J. A. Collier*, for the appellant;

*W. M. Patterson*, for the respondents.

THE CHANCELLOR. From the view I have taken of the law of this case, it is entirely immaterial whether the testimony of Heard is received or rejected. It is unnecessary, therefore, to consider the question, whether he had such an interest in the result of the suit as to render him an incompetent witness for the complainants. From the relation of attorney and client, which existed between the complainants and the defendant Ransom, it was not necessary for them to prove actual fraud, on the part of the latter, in obtaining an assignment of their judgment for about one-tenth of its actual value, including the interest which was due thereon at the time of such assignment. It is a case of constructive fraud, which relieves the clients from the burthen of proving that their attorney intentionally deceived them, or made any misrepresentation whatever in relation to the value of the judgment, or the probability of its collection. And, if the court is not bound to set aside the sale as a matter of course, upon the application of the client, in such a case, the whole burthen of establishing the fairness of the sale, and that it was made upon a full or adequate consideration, is at least cast upon the attorney. The attorney, therefore, can never sustain a purchase of this kind, without showing that he communicated to his clients every thing which was necessary to enable

them to form a correct judgment of the actual value of the subject of the purchase, and as to the propriety of selling at the price offered.   And his neglect to ascertain the true state of the facts himself will not sustain his purchase.   (*Gibson* v. *Seyes*, 6 *Ves.* 271.)

The fact that the assignment, in this case, was made to the father-in-law of the attorney, instead of being directly to himself, is of itself a strong ground of suspicion.   And I have not been able to find any proof, in the case, satisfactorily explaining that feature in the transaction.   The answer of the defendants cannot be resorted to for that purpose; as it was not put in under oath, and would not therefore be evidence in their favor, even where it is responsive to the allegations in the bill.   And the assignment itself is prima facie evidence of the allegation of the complainants, that Ransom did not apply to purchase the judgment on his own account, but for a third person.   Such an application would of course throw the complainants off their guard, as they could not suppose that their attorney, who had no interest adverse to theirs if the sale was to a third person, would advise them to sell the judgment below what he really believed it to be worth. Nor can I account for the neglect to issue an execution upon the judgment, for more than a year after it was entered,.consistently with the fairness of the purchase.   Ransom, as a lawyer, unquestionably knew that it could not subject the complainants to any additional expense to issue an execution, so as to enable the sheriff to collect the debt out of the property of Wheaton, if he had any.   It now appears that Wheaton, during all that time, was in the possession of a farm worth several thousand dollars, of which he was the real as well as the ostensible owner, and that the evidence of his title thereto, by the reconveyance from Comstock, for the consideration of $2000, with warranty, was upon the records of the county.   It also appears, by the testimony of the county clerk, that the defendant Ransom was in the habit of searching the book of deeds and mortgages. Wheaton was also in possession, and was the ostensible owner of the stock and other personal property.   It was the duty of the attorney of these complainants, as they lived at a distance, and

had entrusted him with the collection of their demand because he resided near the debtor, to make the necessary inquiries as to the situation of Wheaton as to property. And if he did his duty in this respect, as it is to be presumed he did, he must have ascertained that he was not only the ostensible owner of the farm and the personal property thereon, but that it was understood in the neighborhood that Comstock had reconveyed the property to him. And if he had ascertained these facts, or any of them, he was bound to show that he communicated that information to his clients, before he applied to them to purchase the judgment for one-tenth of its real value. Had he done this, and at the same time informed them that there was upon the records of Broome county a warranty deed, conveying the farm from Comstock to Wheaton, subsequent to his discharge under the non-imprisonment act, and that there were no other incumbrances upon record which would be entitled to priority over their judgment, no one can suppose that they would have sold their judgment for the sum of $75 only. [And the result would probably have been different from what it was, if the attorney had informed his clients that he had never examined the records, to ascertain whether Wheaton was the owner of the farm in his possession, or whether it was incumbered by judgments or mortgages, which would be entitled to a preference, or even that he had neglected to inform himself whether Wheaton was the ostensible owner of the farm, or of the personal property thereon.]

In any view which can be taken of this case, this purchase of the judgment cannot be sustained, consistently with the principles which have been long settled, in the court of chancery, in relation to the dealings between attorneys and their clients, in reference to the subject matter of the employment of such attorneys by their clients. Whether there has been actual fraud, in the particular case, is not the question upon which the claim of the client for relief usually turns; although the forms of pleading, in such cases, usually charge the purchase of the attorney as a fraud upon the client. But where the consideration paid upon the purchase, by the attorney, is grossly inadequate, so that it is wholly improbable that the client would have made the sale if

he had been fully informed of all the facts which the attorney ought to have ascertained and communicated to his client, the court is bound to declare the sale constructively fraudulent. The cases on this subject are mostly referred to by Mr. Justice Story, in his treatise upon equity jurisprudence; (2 *Stor. Eq.* 306, § 311, &c.;) and it is not necessary to refer to them at length here. It is sufficient to say that the decree of the assistant vice chancellor, in the present case, is fully sustained by the cases, on this subject, both in England and in our own courts.

There is no foundation for the objection that the decree made no provision for the extra counsel fees, commissions and charges of the defendant Ransom, beyond his taxable costs. He has made no claim in his answer for such allowances; nor has he given any proof in support of such a claim. He does indeed show that a motion was made, by Wheaton, to set aside the judgment. But that motion was denied with costs; and the attorney who made the motion testifies, that the taxable costs of opposing was a fair compensation for the service. The presumption also is that those costs have been paid; as no claim for them has ever been made in this suit. Nor did the points made by the appellant, before the assistant vice chancellor, ask for any deduction on account of commissions and counsel fees.

The decree appealed from must be affirmed, with costs.