WILLIAM C. KISLING AND CAROLINE A. KISLING, INFANTS, (BY THEIR GUARDIANS, JOHN HAYES AND MARIA HAYES,) AND JOHN HAYES AND MARIA HAYES, HIS WIFE v. WILLIAM J. SHAW.

> 33  425
> 82  380
> 33  425
> 92  409

TRANSACTIONS BETWEEN ATTORNEY AND CLIENT.—The rule applicable to transactions between attorney and client is, that the attorney who bargains in a matter of advantage to himself with his client, is bound to show that the transaction is fair and equitable.

IDEM.—The attorney is bound to show that his client was fully informed of his rights and interests in the subject matter of the transaction and the nature and effect of the transaction itself, and was so placed as to be able to deal with the attorney at arms-length.

IDEM.—This rule extends equally to all transactions between principal and agent, trustee and *cestui que trust*, guardian and ward, parent and child, and generally to all cases where a relation of confidence exists between the parties.

IDEM—BASIS OF THE RULE.—The general principle governing this class of cases and forming the basis of the rule is, that if a confidence is reposed, and that confidence is abused, and the other party suffers an injury thereby, the Court will grant relief.

EQUITABLE RELIEF AGAINST ATTORNEY.—To entitle the client to relief, it is not enough to show that the relation of attorney and client existed, and that during its existence the parties entered into a contract—the client being induced thereto by the abuse of the confidence by the attorney, but it must likewise be shown that the client has suffered injury through this abuse of confidence.

IDEM.—A distinction is to be taken, as to voidability of contracts, between those

54

of trustee and *cestui que trust* and those of attorney and client; while the former are voidable for fraud alone on the part of the trustee, in the latter it must be shown in addition that injury resulted to the client from the fraud. But this rule has no application to contracts of either class which are illegal or against public policy.

VALUE OF PROPERTY.—In the absence of a contrary showing, the value of property at a given time will be presumed to be what it was then worth in the market.

IDEM.—The rental of property is not an unerring criterion of its value, even in case the title be perfect, and it is less certain if the title be doubtful. It may be considered, for the purpose of ascertaining the value of the property rented, but should not outweigh other and direct evidence to the same point.

MATERIALITY OF FINDINGS.—In an action against an attorney to set aside certain conveyances of property made to him by his client, on the ground of fraud practiced by the attorney in their procurement, and inadequacy of consideration, if, to the contrary, it be found that said consideration was fair and adequate, and that the client was willing to sell the property, then the further finding by the Court below, that there was no fraud practiced by the attorney in the procurement of said conveyances, becomes immaterial for all purposes of the appeal by plaintiff from a judgment in favor of defendant.

COMPETENCY OF WITNESS.—A plaintiff, who at the time of the alleged fraudulent conveyances was the wife of the client who sold the property which is the subject of the litigation, and whose sole interest in the property is derived through the will of her husband, who died before suit commenced, was not a competent witness on the trial, in her own behalf, under the three hundred and ninety-second section of the Practice Act as amended in 1863. (*Davis* v. *Davis*, 26 Cal. 34, is cited as authority.)

MATERIALITY OF ERRONEOUS RULING.—Where evidence was erroneously excluded, which, if admitted, could not have aided the party excepting to its exclusion to a more favorable judgment than the one rendered, such error will be treated as immaterial on appeal; and so, generally, this Court will not consider, for any purpose, inconsequential rulings and decisions made during the progress of a trial on which error is assigned.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This cause was tried upon the issues presented by the complaint and answer to the complaint, before the District Court, without a jury.

The following are the findings of fact and conclusions of law of the District Court:

"First—During the year A. D. eighteen hundred and forty-seven (1847) John W. Kisling settled upon a tract of land, which became subsequently generally designated as the

'Kisling Claim;' such tract being wholly situate within the limits of the City of San Francisco, as defined by the Act entitled 'An Act to reincorporate the City of San Francisco,' passed April 15th, 1851. That said John W. did not inclose said tract with a fence, nor reduce the same to his actual possession, but erected a small house thereon; devoted a small portion thereof to cultivation, and another small portion to the making of brick; said John W. surveyed, or caused to be surveyed, (160) one hundred and sixty acres, or about that quantity, which survey embraced within its exterior lines his said small house and brickyard, and the lands conveyed to defendant, as hereinafter stated.

"Second—The boundaries of the land so settled upon by said John W. were as follows: Commencing at a stake on the north bank of Mission Creek, and about fifty (50) feet east of where the present Johnston or Ninth street intersects said creek; thence up said creek to Tracy street; thence southwesterly along Tracy street to the westerly line of what is now Folsom street; thence northerly (40) forty chains to a point north of what is now Mission street, between (10th) Tenth and (11th) Eleventh streets; thence easterly (40) forty chains to a point near the corner of now Seventh and Folsom streets, and from thence to the point of beginning. That previous to 1853 said John W. had fenced in and reduced to his possession all of that portion of said one hundred and sixty (160) acres embraced in the controversy between plaintiffs and defendant, and had asserted a pre-emption claim to the whole (160) one hundred and sixty acres, and that the same was divided and laid off into streets and blocks by the City of San Francisco prior to 1853; that said John W. had also made considerable improvements, such as houses, stable, brickyard, vegetable garden, etc., upon some of said blocks of ground, to wit: Blocks 18 and 46, but for the most part they were barren hills of sand. That said John W. continued to reside on said tract of land with his wife (the plaintiff Maria) and his family until the latter part of 1859, when he removed to San Mateo County.

" Third—That said plaintiff Maria was married to said John W. in 1852, and she is his widow; that plaintiff John Hayes is her present husband; that the other plaintiffs are children of said John W.

" Fourth—That said John W. died in San Mateo County, California, in September, A. D. 1861, leaving a last will and testament, under which plaintiff Maria has become seized of three fourths (3-4ths) of the real estate of which said John W. died seized in the County of San Mateo, and the plaintiffs, William C. Kisling and Caroline A. Kisling, each one eighth thereof, and of one half of the lands of which said John W. died seized in the City of San Francisco, and said children of the other half thereof. That said will was duly admitted to probate, and administration upon the estate of said John W. was had and closed prior to the commencement of this action.

" Fifth—That plaintiff John Hayes and plaintiff Maria were at the commencement of this action and still are the duly appointed, qualified, and acting guardians of the persons and estates of the said infant plaintiffs, William C. and Caroline A.

" Sixth—That in the early part of the year 1853 defendant first became acquainted with said John W. Kisling. Defendant was at that time a practicing attorney and counsellor at law, and then became the attorney and counsellor of said John W., who placed in him the most implicit confidence, and rarely made a transaction concerning this land without first having the judgment and approval of defendant.

" Seventh—June 23, 1853, said John W. conveyed by quitclaim deed all his right, title, and interest to defendant and Horace Hawes, what is now known on the official map of the City and County of San Francisco as Blocks No. One, No. Two, and the northerly half of Block No. Seven, in consideration of legal services rendered and to be rendered by Hawes and defendant to defeat a claim to all this and other lands commonly known as the ' Bolton and Barron Claim,' which claim was very formidable, and supported by

a large number of men of great wealth and influence, which claim was, at the December Term, A. D. 1859, viz. : in March, 1860, defeated and rejected in the Supreme Court of the United States, to which defeat the defendant, Thomas Hayes, and others, greatly contributed. (The lands so conveyed to Hawes and defendant are not in controversy in this action.) There can be no doubt from the evidence (and I find) that defendant and Hawes, as lawyers, honorably earned the full value of the lands so conveyed to them.

" Eighth—July 7, 1853, said John W. conveyed (quitclaim deed, all his right, title, and interest) to defendant, a portion of the said so-called pre-emption claim bounded as follows : Beginning at the middle of Mission Creek, in a line with the east line of Kisling's claim ;. thence along the middle of Mission Creek to the middle of Thorne or Tenth street; thence northerly along the middle of Thorne street to the middle of Harrison street; thence along the middle of Harrison street to the middle of Price or Eighth street; thence along the middle of Price street to the easterly line of Kisling's said claim ; and thence southerly along that line to the place of beginning—which is otherwise described as Blocks Nos. 43 and 44, and One Hundred Vara Lots Nos. 292, 293, 294, and 295. That said John W. never had, nor did defendant in any manner acquire, title or possession to said 100-vara lots, the same having been previously sold and conveyed by the authorities of the Pueblo or Town of San Francisco to other parties. Said 100-vara lots do not really enter into this controversy ; but if plaintiffs' assertion was true, (which is not the case,) that defendant received the conveyance for said 100-vara lots 292 to 295, inclusive, in trust for said John W. or the plaintiffs, defendant, prior to the commencement of this action, and after the death of said John W., without consideration, and upon the request of plaintiff Maria, quitclaimed and conveyed any interest acquired by defendant from John W. to the said 100-vara lots, to plaintiff Maria Hayes. That the consideration expressed in said deed of July 7, 1853, was five thousand

($5,000) dollars; that the real consideration was a covenant and agreement then entered into by defendant and delivered to said John W., to protect a portion of the remaining lands so claimed by said John W. against and from the so-called Peter Smith Title, viz. : titles claimed to be deraigned under judgment sales against the City of San Francisco, and judged by the then circumstances and the decisions of the Courts as theretofore announced, such covenant and agreement was valuable, and equalled the value of the estate thus quit-claimed and conveyed.

" Ninth—April 3, 1854, said John W. and plaintiff Maria further quitclaimed to defendant what is now known as Block No. (17) Seventeen of the Western Addition, for the sum of two thousand ($2,000) dollars, paid in cash by the defendant to said John W., and which was the full cash value thereof at that time.

" Tenth—In 1853, defendant purchased of Wainwright, and paid for, with the knowledge of John W. Kisling, the improvements on said Block (43) Forty-three, for ($100) one hundred dollars, and in 1854, at his own cost and expense, with the knowledge and acquiesence of said John W., fenced all of said Blocks (43, 44 and 17) Forty-three, Forty-four and Seventeen; and from thence, with the knowledge of said John W. and plaintiff Maria, asserted exclusive owner-ship over the same in his own right, paid the taxes thereon, leased the same to various tenants, who paid him rent; in some instances, said John W. witnessed the execution of the leases, and as the agent of the defendant, collected the rents thereunder, and paid the same over to defendant. From April, 1854, to his death (in 1861), said John W. and the plaintiff Maria were well aware of the claim of title and asser-tion of exclusive ownership by defendant to said Blocks 43, 44 and 17, so as aforesaid conveyed to defendant, and acqui-esced therein. Said John W. and plaintiff Maria, from 1853 to their removal to San Mateo County, in 1859, resided on the adjoining block (18) eighteen, were intimately acquainted with defendant, and no evidence has been given having the

slightest tendency to show that defendant held the same under any secret trust, or that said John W. and his wife, or either of them, expressed any dissatisfaction at having made such conveyances.

"Eleventh—In March, 1859, Kisling, for the purpose of having a home and securing a piece of land with a perfect title, purchased of witness, Edward Barron, a rancho in San Mateo County, for $8,560, paying a part of the purchase price in money, a portion a mortgage against Phelps, and he and his said wife united in a mortgage for the deferred payments for $3,808. The conveyance from Barron was to Kisling and wife, Maria. In order to pay said last mentioned mortgage and for other purposes, Kisling, deceased, determined to sell the easterly half of Block (18) Eighteen, Block (46) Forty-six, and all of Block Eight (8), which he had not previously conveyed. He offered the same repeatedly and to various persons for six thousand dollars. Defendant became the purchaser at that sum on the 12th day of September, A. D. 1859, and paid a part of the purchase money, when the conveyances of that date were delivered September 22d, and executed and delivered his note, secured by mortgage, payable to the joint order of said John W. and Maria Kisling, his wife; which note and mortgage was payable with interest monthly, and monthly interest thereon was paid by defendant in the years 1859, 1860 and 1861, and sometimes receipted for by said John W. and sometimes by plaintiff Maria, who signed her then husband's name.

"Twelfth—The principal controversy between the parties is over the conveyance dated September 12th, and executed September 22d, A. D. 1859. The plaintiffs claim that John W. was a foreigner by birth, (which I find to be true), and I also find he resided in the United States from the age of fifteen (15) years. It is also claimed by plaintiff that said John W. was a weak minded man, easily influenced, scarcely capable of protecting his own interests when dealing with a stranger, much less when dealing with his confidential legal adviser. These claims are not substantiated by the evidence,

and I find the same to be untrue. On the contrary, I find that said John W. was a member of the Common Council of San Francisco in the years 1851 and 1852. He read and well understood the English language. He possessed at least average shrewdness and intelligence, and was an honorable and good business man.

" Thirteenth—In 1853, the property in controversy was some distance from the then City of San Francisco; it was inaccessible for the want of roads or streets; it was covered with sand hills, and almost wholly unfit for cultivation, having a prospective value, held only by the slight tenure of a doubtful possession. It was claimed by persons deraigning title through judgment sales against the City of San Francisco, (Peter Smith, so-called, titles), and also by what up to March, A. D. 1860, was regarded as a still more formidable claim, and as certain of title, viz: the ' Bolton and Barron, or Prudencio Santillan claim.' It had no marketable value in September, A. D. 1859, and no one except defendant would in that year invest money in the purchase of the possessory claim of Kisling without first obtaining at least one or both of said asserted titles. In 1853, the claim of Kisling to the whole one hundred and sixty (160) acres, was worth not to exceed ($10,000) ten thousand dollars.

"Fourteenth—From early in 1853, to Kisling's death, defendant rendered professional services in protecting the Kisling claim from the asserted titles mentioned in the next preceding finding, of the value of ($30,000) thirty thousand dollars, and far in excess of the value of all the interest conveyed to him by Kisling and wife, or either of them.

" Fifteenth—John W. Kisling would have had no property had it not been for the efforts and zeal of defendant in his behalf.

" Sixteenth—The property in controversy is now of great value (it having been admitted for the purposes of this trial it is worth half a million of dollars.)

" Seventeenth—At the time of conveyance to defendant (in September, 1859,) defendant paid and agreed to pay by his

note and mortgage, the full and fair cash value of the lots then purchased by him from said John W., and then conveyed by said John W. and wife, and more than any other person would have paid, or agreed to pay, for the interest of said John W. thereto and therein. The defendant did not at any time practice any fraud or imposition upon said John W. or his said wife, nor make to them or either of them any false statement to induce them or either of them to execute and deliver the said conveyances of September, A. D. 1859, nor did he suppress or conceal any matter or thing within his knowledge from said John W. or his said wife, for the purpose of procuring the execution and delivery of said deeds of September, 1859.

" Eighteenth—That said John W. and plaintiff Maria well knew and fully understood the contents and effect of the deeds executed by them in September, 1859, and from that time until his death, said John W. acquiesced therein, and the plaintiff Maria also acquiesced therein until a very short period prior to the commencement of this action.

" Nineteenth—That plaintiff, Maria, is a well educated, sharp, shrewd lady, possessing much more knowledge of and capacity for business than ladies usually do.

" Twentieth—That defendant did not overreach said John W. nor plaintiff Maria, in his said purchase of September, A. D. 1859; but on the contrary, he fully apprised them of the true situation of said property, and did not purchase the same until after said John W. had offered the same for sale to many persons who had the pecuniary ability to purchase, and until after said John W. had failed, after diligent efforts to sell the same, to obtain a purchaser on as favorable terms for said John W. as defendant purchased the same.

" Twenty-First—Defendant did not receive the conveyances of any portion of the real estate described in the pleadings in trust for said John W., or his wife or children; that is, neither upon any express or implied trust.

" Twenty-Second—That defendant did not take or avail

55

himself of any advantage, by reason of his position of attorney and counsel for said John W.

"Twenty-Third—That defendant did not, when acting as one of the appraisers of the estate of said John W. Kisling, fraudulently or in any manner conceal any property or interests in property belonging to said estate."

The following are the conclusions of law:

"First—That the case made by plaintiffs is without equities, and the plaintiffs' complaint must be dismissed.

"Second—That the alleged cause of action is barred by the provisions of section nineteen of the statute of this State, entitled 'An Act defining the time for commencing civil actions.'

"Third—That plaintiffs take nothing by their complaint.

"Fourth—That defendant have judgment that he is the owner in fee, as prayed for in his answer.

"Fifth—That defendant recover against plaintiffs his costs and disbursements of this action."

Judgment was entered accordingly.

The plaintiffs, upon a statement of the evidence and proceedings had on the trial, moved for a new trial on the grounds following, to wit:

"First—Insufficiency of the evidence to justify the findings and decision of the Court.

"Second—The findings and decision of the Court are contrary to the evidence.

"Third—The findings and decision of the Court are against law.

"Fourth—Errors in law occurring at the trial, and duly excepted to on the part of plaintiffs."

The motion for a new trial was denied by the Court, and the plaintiffs appealed from the judgment and the order denying said motion, and for error assigned the said grounds

for a new trial, with an elaborate statement of the alleged errors in law occurring at the trial.

The defendant's answer put in issue all the material averments of the complaint in respect to the alleged artful practices and undue influence of the defendant with and over John W. Kisling; also, of all alleged false suggestions and fraudulent concealment of material facts, and of all alleged violation of his duties towards his client; also, of the alleged want or inadequacy of consideration for the conveyances of property made to him by said Kisling; also, that said conveyances were made in trust, either express or implied; and prayed that it be adjudged that he was the owner in fee of the property conveyed by said Kisling.

The other facts are sufficiently stated in the opinion of the Court.

*C. T. Ryland*, and *S. J. Bergen*, for Appellants.

This action is brought by the appellants, the widow and surviving heirs of John W. Kisling, deceased, the former client and friend of the respondent Shaw, to set aside the deeds in the complaint specified, on the grounds of trust and fraud. We do not discuss the questions concerning Kisling's possession or title to the property in dispute, because in such a case the issue of title cannot arise. Where a conveyance has been made *bona fide* there is in general no relation existing between the grantee in fee and his grantor such as will raise an implied obligation on the part of the former against a denial of the title and estate of the latter. Upon execution of the conveyance and payment of the purchase money, in absence of fraud or other cause, they stand as strangers toward each other. But when fraud intervenes in the transaction, mistake or other proper ground for rescission in an action to rescind and avoid the transaction therefor, the rule is different. The vendor and purchaser stand toward each other in a trust relation, each being trustee for the other; the one, trustee of the legal title, and the other

the trustee of the purchase money. Upon execution of the conveyance and payment of the purchase money, in the absence of fraud and mistake, etc , the trust relation determines, but not before. If fraud intervene in the transaction, mistake or other proper ground for rescission in an action for that purpose, existence of proper ground of rescission is the only issue. `Whether the title attempted to be transferred was defeasible or indefeasible, is entirely foreign to the case. The rule is, that if in the meantime the party who succeeds in thus fraudulently clothing himself with the legal title, or with the possession, whereby he gains any advantage, it inures, not to his benefit, but to that of the party defrauded. If the fraud for which the transaction is impeached be merely constructive, compensation is allowed for the actual expenditure made in perfecting the title; but if the fraud be actual, then no compensation whatever is allowed for any cause. To do so would be to offer a premium for fraud. No man shall be allowed to take advantage of his own wrong. (*Goodwin* v. *Hammond*, 13 Cal. 168; *Keech* v. *Sanford*, 23 Penn. 325; 1 Leading Cases Equity, 85, 92; *Hallet* v. *Collins*, 10 How., U. S., 174; *Thedgill* v. *Pintard*, 12 How., U. S., 24; *Meadows* v. *Hopkins*, Meigs, 183; *Rochell* v. *Benson*, Meigs, 5; *Murphy* v. *Officer*, 8 Yerger, 504; *Bush* v. *Marshall*, 6 How., U. S., 284; *Galloway* v. *Finley*, 12 Pet. 294; *Tillman* v. *Lytle*, 13 Ill. 239; *Grundy's Heirs* v. *Jackson's Heirs*, 1 Little, Ky., 13; *Marshall* v. *Craig*, 1 Bibb. 396; *Connelly* v. *Childs*, 2 A. K. Marshall, 243; *Bodley* v. *McCord*, 4 A. K. Marshall, 475: *Coryell* v. *Cain*, 16 Cal. 572; *Hubbard* v. *Barry*, 21 Cal. 324; Hill on Trustees, 808.)

In excluding the witness Maria Hayes as incompetent, the Court considered that it was acting under and in strict conformity to the decision in *Davis* v. *Davis*, 26 Cal. 23.

-It must be admitted that the language of the opinion of the Court in that case justifies the ruling of the Court below, but it is respectfully submitted that the opinion is too general. If the word "representative" be construed in

the comprehensive sense apparently contemplated by the Court, the result will be that in the course of a very few years no one would be a competent witness in his own behalf in an action affecting real estate. The result will limit rather than enlarge the competency of witnesses, and run counter to the clear policy of all legislation upon the subject. It is respectfully submitted that the decision in *Davis* v. *Davis* requires modification.

The learned counsel made an elaborate argument against the sufficiency of the evidence to sustain the findings of fact contained in the record, and that said findings and the judgment are against law, and therein made the following points, viz: If an attorney bargain with his client, the burden is on him of establishing its perfect fairness, adequacy and equity; and if no proof be given, or if the proof be insufficient to meet this requirement, the Court must hold the case one of constructive fraud. (Story's Eq. Juris., Sec. 311.) The rule is the same as to dealings between principal and agent as between client and attorney. (Id. Sec. 315.)

It was decided in *Evans* v. *Ellis*, 5 Denio, 640, by the Court of Errors, that where the relation of solicitor and client exists, and a security is taken by the solicitor from his client, the presumption is that the transaction is unfair, and the *onus* of proving its fairness is on the solicitor. (See, also, 6 N. Y. 268.)

In *Howell* v. *Ransom*, 11 Paige, 538, it was held that it was not necessary to show actual fraud in order to invalidate transactions between attorney and client. And the Chancellor remarked: "If the Court is not bound to set aside the sale (a sale by a client to his attorney) as a matter of course upon the application of the client in such a case, the whole burden of the fairness of the sale, and that it was made upon a full or adequate consideration, is at least cast upon the attorney." There are many other cases to the same effect. (9 Johns. 253; 10 Paige, 352; 2 Denio, 607; Story's Eq. Juris. Secs. 308–324; 7 Sim. 539; 27 Eng. Law and Eq. 168; 3 Cow. 537; 13 Barb. 524; 31 Barb. 9; 39

Eng. Law and Eq. 569; 35 Eng. Law and Eq. 100; 16 N. Y. 285.)

To guard against the strong influences which the connection of attorney and client is so apt to originate, the law not only watches over the transactions of the parties with great and jealous scrutiny, but it often declares transactions absolutely void, which between other parties would be open to no exception.   Many of the cases establish the doctrine that, while these connections exist in full vigor, the adviser shall take no benefit to himself from contracts or other negotiations with the advised.  (*Hatch* v. *Hatch*, 9 Vesey, 297; *Wood* v. *Downer*, 18 Vesey, 126; *DeMontmorency* v. *Devereux*, 7 Clark & Finelly, 188.)   A doctrine intended to supersede the necessity of any inquiry into the means used or the exertion of influence in any particular case, which is often difficult, if not impossible, from the very nature of things. (*Wells* v. *Middleton*, 1 Cox, 125; *Wright* v. *Proud*, 13 Vesey, 137.)   An attorney, or other confidential adviser, is not permitted to avail himself either of the necessities of his client, or of his good nature, liberality or credulity, to obtain undue advantages, bargains or gratuities; and it has been said there would be no bounds to the crushing influence of the power of an attorney who has the affairs of a man in his hands if it were not so.   (*Gibson* v. *Jeyes*, 6 Vesey, 278; *Montesquieu* v. *Sanders*, 18 Vesey, 313; *Jones* v. *Thomas*, 3 Y. & Coll. 498.) As to the rule generally governing the relation of attorney and client, see: *Butler* v. *Haskell*, 4 Desauss. 651; *Howell* v. *Ransom*, 11 Paige, 538; *Berrien* v. *McLane*, Hoffman's Ch. 400; *Evans* v. *Ellis*, 5 Den. 640; *Galbraith* v. *Elder*, 8 Watts, 94; *Reid* v. *Stanley*, 6 Watts & Serg. 369; *De Rose* v. *Fay*, 3 Edw. Ch. 369; *Poillon* v. *Martin*, 1 Sandf. Ch. 569; *Lewis* v. *Hillman*, 18 E. L. & Eq. 40 ; *Reynelle* v. *Spreye*, 13 E. L. & Eq. 74; *Lewis* v. *J. A.*, 4 Edw. Ch. 599; *Walker* v. *Smith*, 29 Bea. 394; *Thompson* v. *Judge*, 3 Drewry, 306; *Pearson* v. *Benson*, 28 Bea. 600; *Waters* v. *Thorn*, 22 Bea. 547; *Denton* v. *Donner*, 23 Bea. 285; *Bank of London* v. *Tyrrell*, 27 Bea. 277; *Popham* v. *Brook*, 5 Russell, 10; *Dent* v. *Bennett*, 7

Simons, 539; *McCormick* v. *Malin*, 5 Blackf. 509; *Sears* v. *Shafer*, 2 Seld. 268; S. C. Barb. 412; *Swaze* v. *Burke*, 12 Pet. 11; *Kennedy* v. *Brown*, 7 Am. Law Reg., U. S., 357.

*Patterson, Wallace & Stow*, for Respondent.

The facts established by the findings are: 1st. Defendant paid full, fair value; 2d. He was not guilty of any fraud or imposition; he did not make any false statement, nor did he suppress or conceal any matter for the purpose of procuring the execution of the deeds of 1853, 1854, and 1859; and if sustained, must of necessity be conclusive of the case. Those were questions of fact; if the evidence was not all in favor of defendant, it was contradictory, and this Court will not review the findings. (*Kimball* v. *Gearhart*, 12 Cal. 27; *Adams* v. *Pugh*, 7 Cal. 150.)

By the Court, RHODES, J.:

The plaintiffs, claiming as the devisees of John W. Kisling, deceased, seek to set aside certain deeds conveying several lots in the City of San Francisco, which were executed by John W. Kisling and wife to the defendant in the years 1853, 1854 and 1859. The grounds upon which they proceed are that during all the time from 1853 to 1859, inclusive, the defendant was the attorney and confidential friend and adviser of Kisling; that by his artful practices he gained an undue influence over Kisling; that by false suggestions and fraudulent concealment of facts, and generally by a violation of his duties toward his client, he induced and persuaded Kisling to execute and deliver the several conveyances; that the deeds of 1853 and 1854 were executed without any consideration, and were really made in order that the lots might be held in trust for Kisling, and that the lots conveyed by the deeds of 1859 were conveyed upon a greatly inadequate consideration. The Court found that the defendant was the attorney and adviser of Kisling, as alleged

in the complaint, that the several parcels of land were conveyed to the defendant at the time alleged, but the other material facts were found for the defendant.

The Court found that the "defendant did not receive the conveyances of any portion of the real estate described in the pleadings in trust for the said John W. Kisling, or his wife or children—that is, neither upon any express or implied trust." There can be no question as to the correctness of the finding, so far as regards the express trust. The interest in the lands conveyed was the separate property of Kisling, and therefore no trust in favor of the wife or children of Kisling could arise by implication of law in consequence of the execution of the deeds in the manner and under the circumstances alleged in the complaint. It is a conclusion of law rather than of fact whether an implied trust in favor of Kisling arose out of the facts attending the execution and delivery of the deeds. The determination of this point depends upon the solution of questions which will now be considered.

The rule applicable to transactions between an attorney and client, such as contracts, sales, gifts, etc., is that the attorney who bargains in a matter of advantage to himself with his client, is bound to show that the transaction is fair and equitable; that he fully and faithfully discharged his duties to his client, without misrepresentation or concealment of any fact material to the client; that the client was fully informed of his rights and interests in the subject matter of the transaction and the nature and effect of the contract, sale, gift, etc., and was so placed as to be able to deal with his attorney at arms-length. (1 Sto. Eq. Juris., Sec. 310; *Gibson* v. *Jeyes*, 6 Ves. 266; *Newman* v. *Payne*, 2 Ves. 199; *Howell* v. *Ransom*, 11 Paige, 538; *Evans* v. *Ellis*, 5 Den. 640; *Ford* v. *Harrington*, 16 N. Y. 288; *Whelan* v. *Whelan*, 3 Cow. 537; *Cuts* v. *Salmon*, 12 E. L. and Eq. 316; *Greenfield Estate*, 14 Penn., S. R., 490; *Wright* v. *Proud*, 13 Ves. 137; *Hunter* v. *Atkins*, 3 Myl. and K. 113.) The rule is not limited to the case of attorney and client, but applies, as

well, to transactions between principal and agent, trustee and *cestui que trust*, guardian and ward, parent and child, and generally to cases where a relation of confidence exists between the parties. The general principles governing this class of cases and forming the basis of the rule is, that if a confidence is reposed, and that confidence is abused, and the other party thereby suffers an injury, the Court will grant relief. An essential element of the rule is, that the attorney, in the language of Lord Eldon, in *Gibson* v. *Jeyes, supra,* "bargains in a matter of advantage to himself," or, what amounts to the same thing, that the client has suffered injury through the abuse of confidence by the attorney. This fact must be both alleged and proven. It is not enough to show that the relation of attorney and client existed, and that during the existence of the relation the parties entered into a contract, the client being induced thereto by the abuse of confidence by the attorney. If this were so it would follow either that the contracts of an attorney and client are voidable, like those between a trustee and *cestui que trust,* which is not true (1 Sto. Eq. Juris., Sec. 311); or that a party is entitled to relief on the ground of fraud, without showing that damage resulted from the fraud— which is contrary to the undoubted principles of law. (Id., Sec. 203.) The very general language of some of the cases is broad enough to lead to the opposite conclusion; but when the pleadings and the facts are looked into, it will be found in every case, that the element of damage to the client forms an important feature. In the cases we have cited this is very apparent. In *Gibson* v. *Jeyes* the defendant who granted the annuity was eighty years of age, and he secured its payment only by his bond; and the Court was satisfied from the evidence that the annuity was too small, in view of the age and health of the grantor, for the consideration paid. In *Newman* v. *Payne,* 2 Ves. 199, the attorney, in addition to bonds taken from time to time to secure the payment of costs, and which the Court regarded as injurious to the client, had pro-

cured the client's bond for the payment of one thousand pounds as a gift. In *Howell* v. *Ransom*, 11 Paige, 538, action was brought to set aside a sale by a client to his attorney of a judgment for seven hundred and one dollars and seventy-seven cents, which was sold for seventy-five dollars. In *Evans* v. *Ellis*, 5 Denio, 640, the complainant sought to set aside a mortgage of real estate executed to an insolvent attorney in consideration of his personal bond for a like amount. In *Ford* v. *Harrington*, 16 N. Y. 288, it appears that the client assigned to his attorney a contract for the conveyance of a tract of land for a grossly inadequate consideration. The examination need not be proceeded with further, for the cases show the advantage obtained by the attorney, or, what amounts to the same thing, the injury sustained by the client, unless it be those in which the contract is set aside as illegal or opposed to public policy—as contracts tainted with champerty, etc. In view of the rule we have indicated the plaintiffs charged that the lands conveyed in 1853 and 1854 were conveyed without consideration, and that the lands conveyed in 1859 were conveyed for a sum which was "greatly inadequate and disproportionate to the real and true market value of said land at the time."

The plaintiffs, as we have remarked, aver that the parcels of land which Kisling conveyed to the defendant by the deed dated July 7th, 1853, and that of April 8th, 1854, were conveyed without any consideration whatever. The Court found that Kisling never had, and the defendant did not, acquire the title to or possession of the one hundred vara lots described in the deed of 1853, and that the real consideration of the conveyance of the other parcels described in the deed —Blocks Forty-three and Forty-four—was a covenant of the defendant to Kisling, to protect a portion of the lands claimed by Kisling against the Peter Smith title; and that such covenant was valuable and equalled the value of the estate conveyed by Kisling to the defendant. The Court found that the consideration of the conveyance of Block Seventeen (conveyed in 1854) was two thousand dollars, paid by the defend-

ant to Kisling; and that that sum was the full cash value of the land at that time. The findings as to the value of the lands sold and of the consideration given cannot now be disturbed. The ascertainment of the value of the property in controversy is peculiarly within the province of the jury, or the Court below sitting in the place of a jury, and their determination will not be reviewed, unless it is clearly against the evidence. When the evidence is conflicting the verdict or finding must stand.

We can readily conceive of cases in which the sale of a parcel of property might be attended with injury to other property with which it was in some way connected, or in which the property sold possessed some peculiar value to the holder above its market value. But nothing of the kind is shown in this case. Nor does it appear that Kisling was unwilling to sell. When the case is free from these questions the only matter injuriously affecting the client is the want or inadequacy of the consideration. The consideration being found to be adequate, no purpose is subserved in pursuing the inquiry whether the attorney has fully, faithfully and honestly discharged his duties to his client, for his failure in this respect is not attended with injury to the client. True, it is not impossible that a price in excess of the market value might have been obtained from some third person, but the presumption is the other way, and some evidence is required to remove it. The attorney could not prove that no one would have given more than the market value of the property.

We come now to the property sold in 1859.

The plaintiffs contend that the fact that a portion of the lands conveyed to the defendant in 1853 and 1854 were included in the conveyances of 1859, taken in connection with the fact that the east half of Block Eighteen, Block Forty-six and the unsold portion of Block Eight, was all that Kisling intended to sell at that time, is evidence of fraud on the part of the defendant. The purpose of the parties or either of them in including in the deeds Blocks Numbers

Seventeen, Forty-three and Forty-four, does not appear from anything that is developed in the case—either in the evidence or the findings. It does not appear that Kisling acquired or held any right, title or interest therein after his conveyances, executed in 1853 and 1854, and therefore the inclusion of those blocks in the deeds of 1859 was productive of no injury to Kisling. And as the defendant had already acquired Kisling's title, the second conveyance by Kisling was of no benefit to the defendant. But conceding that the defendant procured the insertion of those lands in the deeds of 1859 without the knowledge of Kisling, the result would not. be changed, for the plaintiffs are not entitled to relief on the ground of fraud unless the fraud is coupled with damage. The allegation of fraud in this respect, however, is negatived by the finding that Kisling understood the contents and effect of those deeds. We shall consider the deeds (as they were treated by the Court below) as conveying the east half of Block Eighteen, Block Forty-six, and the unsold portions of Block Eight. As to the conveyance executed by Maria Kisling alone, it need only be said that it was void, as she was then the wife of John W. Kisling.

There would appear to be no doubt from the evidence that Kisling was willing to sell these lands. But it is contended that the desire or willingness to sell was brought about by the artful suggestions of the defendant, by exciting in his mind apprehensions and fears of impending loss of his lands. This charge is not sustained by the evidence, nor is it found by the Court to be true; but, on the contrary, it is found that he did not practice any fraud or imposition upon Kisling, nor make any false statement, or suppress or conceal any matter or thing from Kisling for the purpose of procuring the execution of the deeds.

With respect to the value of these lands and the adequacy of the price paid, the Court found that they were purchased by the defendant from Kisling at the price of six thousand dollars; that the defendant paid a part of the purchase money at the time of the delivery of the deeds, and executed

his promissory note to Kisling and wife for the balance, and secured the same by his mortgage; that he afterwards paid to Kisling and wife the amount of the note and interest; that the price at which the lands were sold was the full and fair cash value thereof at the time of sale; that Kisling, after diligent efforts to sell, failed to effect a sale on as favorable terms for himself as those upon which the defendant purchased, and that the defendant paid—including the sum paid in hand and his note—"more than any other person would have paid or agreed to pay for the interest of said John W. Kisling thereto and therein." The finding as to the price, its adequacy and payment, cannot be disturbed, for the evidence tends to prove those facts.

The plaintiffs complain of the length of credit given and the rate of interest reserved. Those matters, as we understand, were taken into the account by the Court in ascertaining whether the price was fair and adequate. A credit extending from three to twelve months, with interest at one and one quarter per cent per month, may have been unusual at that time, in cases where the title of the lot was regarded as good or marketable; but it would be neither unusual or unreasonable to give longer terms of payment with lower rates of interest, on the sale of a doubtful title. The Court was justified in finding that in September, 1859, it had no marketable value. That was prior to the decision in *Hart* v. *Burnett*, the confirmation of the title of the city, the final rejection of the "Bolton and Barron Claim," or the determination of the leading questions arising under the Van Ness Ordinance; and it was testified that property with the title in that condition, was seldom offered for sale in the real estate houses in San Francisco.

The rental is not an unerring criterion of the value of land, even in case the title is perfect; and it is less certain in case of a doubtful title. It is a matter of everyday experience in this State, that rents are paid to landlords having nothing in the lands but naked possession. It may properly be taken into consideration, in connection with the estimates

of witnesses, in finding the value of the land, but cannot be regarded as more conclusive evidence of the value than the latter.

The price being found to be fair and adequate, it becomes unnecessary, under the principles already announced, to inquire into the correctness of the finding that " the defendant did not at any time practice any fraud or imposition upon said John W. or his said wife, or make to them or either of them any false statement, to induce them or either of them to execute and deliver the said conveyances of September, A. D. 1859, nor did he suppress or conceal any matter or thing within his knowledge from the said John W., or his said wife, for the purpose of procuring the execution and delivery of said deeds of September, 1859."

We will notice some of the other points presented by the plaintiff, which have a bearing on the questions on which the case turns.

One of the plaintiffs, Maria Hayes, formerly the wife of Kisling, now deceased, was called as a witness to testify to matters transpiring before the death of Kisling, and upon the objection of the defendant, her testimony was excluded. Her claim of title to the property in controversy was derived through the will of her deceased husband. A question of this character was presented in *Davis* v. *Davis*, 26 Cal. 34, and it was held that the term " representative of a deceased person," in section three hundred and ninety-two of the Practice Act, as amended in 1863 (Stats. 1863, p. 701), "was intended by the Legislature to designate the executor or administrator of a deceased person, and also the person or party who had succeeded to the right of the deceased, whether by purchase or descent, or operation of law." We are satisfied with this decision, and our plain duty is to give effect to the statute according to our interpretation of its terms, without narrowing or enlarging the limitations that the Legislature has marked out for its operation. The Legislature, if they had thought proper, might have permitted both parties to testify, when both were " representa-

tives" of the same deceased person; or have excluded the
testimony of the "representative" when the adverse party
was not also a "representative" of the same deceased per-
son; or have narrowed the limits of the rule of exclusion so
as not to include facts transpiring before the death of the
deceased, unless at the time they transpired the deceased
was interested in the. matter to which they related. But it
is the province of the Legislature to prescribe the rule, and
the function of the Court is simply to enforce it.

The exclusion of the evidence of what lands Kisling
pointed out as being in his possession, though erroneous,
was of no injury to the plaintiffs, because the Court found
that before 1853 Kisling reduced to possession the lands in
controversy.

We cannot see how the plaintiffs were prejudiced by the
admission of the tax receipts and certificates of redemption
from tax sales, or the mortgage in which the defendant
claims to have been interested, or the evidence of Hawes as
to the services rendered by the defendant for Kisling, for
they have no bearing upon the issues on which the action
must be decided.

Judgment affirmed.


SAWYER, J., concurring specially:

I have carefully examined the testimony in this case, and
I am satisfied that it is entirely sufficient to justify the find-
ings of the Court. In my judgment the facts found under
the law applicable to the case support the judgment. I am,
also of the opinion, that there was no error in the rulings
of the Court in the course of the trial affecting the judg-
ment, and that it should, consequently, be affirmed.