[Civ. No. 20633.   Second Dist., Div. Three.   June 14, 1955.]

J. GEORGE GOLD et al., Respondents, v. VIRGINIA VELKOV, Appellant.

C. E. Spencer and William A. Freeman for Appellant.

Leonard Horwin, Harry M. Fain and Richard Kelton for Respondents.

SHINN, P. J.—Defendant Virginia Velkov instituted an action for separate maintenance against her then husband, Samuel A. Guiberson, Jr., in Los Angeles County. Her husband, who spent much of his time in Texas, made an offer through defendant's attorney, Mr. Giesler, of a settlement of her claims to property and to support.   The offer was not

accepted. Defendant consulted plaintiffs who are also attorneys and after discussing her problems with them she discharged Mr. Giesler and employed the plaintiffs, thereby involving herself in financial transactions with them which led to the present litigation. As a result of conferences between plaintiffs and Mr. Guiberson's attorneys in Dallas, a property settlement was arranged and was carried to completion. In this settlement Mr. Guiberson paid $6,000 to cover present obligations of defendant, $20,000 as attorneys' fees of plaintiffs and $3,000 as costs, having previously paid to the attorneys $1,000 with which to defray their expenses of a trip to Dallas. Previous to that time plaintiffs had received from Guiberson under court order $2,500 as attorneys' fees and $250 as costs and defendant had paid plaintiffs $500 as an advance on costs and $5,000, either as an advance upon their fees or, as she claimed, as a loan which was to be repaid to her, or an advance for expenses which was to be accounted for. In the settlement with Mr. Guiberson defendant also received assignments of certain overriding oil royalties, which assignments were invalid because issued without permit of the Division of Corporations. Other assignments wree issued to her after a permit had been procured. In the meantime Mr. Guiberson had obtained a decree of divorce from defendant in Texas which made a division of property rights and had forwarded to her a check for $500 as a payment on account of $35,000 awarded her by the Texas decree. This check was returned by defendant. Defendant questioned the validity of the Texas decree.

It was agreed between plaintiffs and defendant that plaintiffs would obtain as much as possible from Mr. Guiberson to apply on their fees, and that if their services were worth more, defendant would pay the difference. Eventually it was agreed that the amount payable by defendant should be approximately 25 per cent of the excess of value of what she received in the settlement above what had been offered through Mr. Giesler, the value thereof being approximately $55,000. In accordance with this understanding it was agreed that plaintiffs would be entitled to receive 25 per cent of the royalty interests which defendant received in the settlement. The total of the above sums is $32,500. Plaintiffs also deposited to their account the $6,000 received from Guiberson from which they paid $3,500 to Mr. Giesler for defendant's account and to defendant $2,500.

May 7, 1951, plaintiffs sent to defendant in New York a letter as set out in the margin[1] which was approved by defendant. June 8, 1951 defendant approved a letter re-

[1]"Mrs. Virginia S. Guiberson                    "May 7, 1951
595 Fifth Avenue
New York, N.Y.

Re: Guiberson v. Guiberson

"Dear Virginia:

We are enclosing herewith a copy of our May 5, 1951 letter to Mr. Glen Turner, Mr. Guiberson's Dallas attorney, which is more or less self-explanatory.

"As you will note, the principal features of this settlement are:

"(1) Outright transfer to you of the DeWinter lease;

"(2) Transfer to you of a one-twenty-fourth overriding royalty interest in the Placerita leases;

"(3) $6,000.00 in cash payable to you;

"(4) $20,000.00 in cash payable to us on account of attorneys' fees;

"(5) $3,000.00 in cash payable to us on account of costs and expenses.

"In order to arrive at terms of settlement with the Dallas attorneys, we had to substantially reduce our original demand for attorneys' fees which we sought to have Guiberson pay to apply on account of our services to you. However, we readily did so with a minimum of reluctance because of our arrangement for additional fee from you to be measured by the yardstick which you suggested, namely, approximately 25% of the difference between the settlement which Mr. Giesler recommended and that which we were able to achieve.

"As I promised you during our telephone conversations of last week. I am outlining below the formula for taking care of the fee arrangement between us which we feel is very advantageous to you and of which you expressed tentative approval.

"The Giesler arrangement was to pay you $16,500.00 in cash and $35,000.00 at the rate of $500.00 per month, without interest, making a total, part in cash and part in about six years, of $51,500.00. To date you are out of pocket $5,500.00 which you paid to us, and $3,500.00 which you owe to Giesler, making a total of $9,000.00. After you receive $6,000.00 in cash contemplated by our settlement, you will still be $3,000.00 behind the position in which you would have been by virtue of the Giesler settlement. This means that you must receive back a total of $54,500.00 to place yourself in a position approximating the Giesler settlement.

"We tentatively agreed by telephone that out of the total cash which Guiberson has agreed to pay, namely, $29,000.00, you will take the sum of $20,000.00 and a 75% interest in the two sets of royalties, and we will take $9,000.00 in cash and 25% of the two sets of royalties as payment in full for our services.

"It is our suggestion to put through immediately the property settlement arrangement to which we have now secured Guiberson's consent, without changing those terms in any way, and that at the same time we prepare an agreement setting forth our own settlement and providing for transfer by you to us of a 25% interest in the royalty and/or lease rights, as the case may be, to become effective immediately upon your receiving title to same from Guiberson.

"If this proposed formula to execute our agreement relative to full compensation for our services meets with your full approval, please sign where indicated on the carbon copy of this letter, which we are enclosing for that purpose, and return to us immediately.

"Because of Mr. Guiberson's advanced age and state of health, we

ceived from plaintiffs as set out in the margin.[2]  The settlement with Guiberson was concluded and was later approved by judgment in the California action, which also established the validity of the Texas decree.  Under the arrangement expressed in the writings defendant was to receive $16,500 and plaintiffs were to pay Mr. Giesler $3,500.  Plaintiffs paid defendant $16,500 of which $2,500 was from the $6,000 received from Guiberson.  Including the $3,500 which plaintiffs paid to Mr. Giesler defendant received $20,000; she had paid out $5,500 and had left $14,500.  Plaintiffs retained $18,250, less their expenses, and were to receive 25 per cent of the royalty interests.  Defendant executed to plaintiffs assignments of one-fourth of the royalty interests.  However, this was prior to the obtaining of a permit for the issuance of the assignments by Guiberson.  After a permit was obtained for those assignments, defendant made no further assignments to plaintiffs.  Some five months after these transactions defendant gave notice of rescission of the settlement with plaintiffs, demanded reassignments of the royalties and offered to pay plaintiffs therefor $5,000, which she contended was the amount they had paid her for the same.

Plaintiffs brought this action for declaratory relief.  They alleged that the assignments were valid but that defendant

---

feel that the settlement which we have agreed upon should be executed at the earliest possible date.

"With best personal regards,

Very truly yours,

Gold & Needleman

By (s)  J. George Gold

J. George Gold

JGG:ml

"The foregoing provisions meet fully with my understanding and are hereby approved and agreed to: With the additional provision that you obtain for me the ownership papers of the two cars now in my possession.

(s) Virginia S. Guiberson.                    May 10, 1951
                                                      Date"

[2]"Mrs. Virginia Sherry Guiberson                    June 8, 1951

"Dear Virginia:

"The purpose of this letter is to confirm our understanding and agreement relative to the litigation with your husband in which we have been representing you, and the matter of our fees in connection therewith.

"It was our agreement that we were to receive whatever attorneys fees we could induce or compel S. A. Guiberson, Jr. to pay us, and in addition thereto, in connection wtih that portion of our action not connected with the matter of the divorce and wherein we sought to obtain for you property in excess of that which had been offered you in settlement of your property rights through your former attorney, Jerry Giesler, it was

was claiming they were invalid and they sought a declaration of their rights thereunder. They also alleged that their services were worth more than they were to receive under their settlement with defendant. Defendant answered and filed a cross-complaint by which she sought reassignments upon payment by her of $5,000. She alleged that the services of plaintiffs were reasonably worth not more than $11,500 and that she had entered into the settlement with them without independent advice and without knowledge of the value of the royalties. In addition to the foregoing allegations it was alleged that defendant had learned since the settlement that $6,000 was paid by Guiberson for her use and benefit and that plaintiffs were paid $23,000 by Guiberson with the understanding and agreement that they would pay therefrom the sum of $3,500 owing to Mr. Giesler. It was also alleged that defendant entered into the agreement of settlement without any accounting by plaintiffs of the sum of $4,250 which they had received from Guiberson for costs and expenses. There

---

our understanding that in addition to any cash fee we might obtain, we were to receive 25% of whatever we were successful in securing for you in excess of that which had previously been offered to you.

"As we outlined to you in our letter of May 7, 1951, we were successful in obtaining an offer which included the outright transfer to you of the Dewenter lease, the transfer to you of a one-twenty-fourth (1/24) overriding royalty interest in the York and Schisler leases in the Newhall area, $6,000.00 in cash for you, and cash in the amount of $23,000 payable to us for our fees and expenses.

"Recently you have expressed dissatisfaction with the small amount of cash which you were scheduled to receive according to this formula of settlement.

"Accordingly, we have agreed with you to settle our rights to compensation upon the following basis: Of the total sum of $29,000 cash payable by S. A. Guiberson, Jr., you are to receive $16,500.00; we are to pay $3500 to Jerry Giesler in full satisfaction of your promissory note in that amount which he now holds, and we are to retain the remaining $9,000. You are to receive three-fourths of the Dewenter lease and we are to receive one-fourth of the rights therein. You are to receive three-fourths of the overriding royalty interests in the York and Schisler leases, and we are to receive one-fourth thereof. All other property which has been or is being transferred to you by S. A. Guiberson, Jr. is, of course, to be retained by you.

"Please indicate your approval of the foregoing as the final terms of settlement of our rights to compensation in this matter by affixing your signature to one copy of this letter.

GOLD & NEEDLEMAN
By (s) J. George Gold
J. George Gold

This letter and the statements
contained herein is strictly in accord
with our understanding and my agreement
thereto.

(s)  Virginia Sherry Guiberson
    Virginia Sherry Guiberson          Dated: June 8, 1951.''

were also allegations of defendant's ignorance of the value of plaintiffs' services and of the royalty interests that were involved. Defendant admitted that she had received $16,500 at the time the royalties were assigned but it was alleged that $2,500 was a part of the $6,000 paid by Guiberson, and that $5,500 was in repayment of the sums of $500 and $5,000 which defendant had paid plaintiffs and which she claimed were to be returned to her. She therefore substantially alleged that plaintiffs paid her from their own funds only the sum of $5,000, inasmuch as they had received $9,000 more than they had earned. During the trial she amended her cross-complaint by striking out the figure $5,000 and inserting an offer to do equity.

At the commencement of the trial plaintiffs announced their willingness to reassign the royalty interests upon the receipt of $14,000 which they claimed to have paid for the same. The question whether defendant had a right to rescind the transfer of the royalties was thereby withdrawn, but there remained a clear-cut issue as to the amount defendant had received for the transfers to plaintiffs which it would be her duty to return. Inasmuch as the amount was paid from sums received by plaintiffs for fees and expenses which they alleged they had earned, and which defendant alleged were in excess of what they had earned, and in view of the fact that the settlement was agreed to without any accounting by plaintiffs, the court had those issues to decide in order to determine the amount which defendant should restore. As we shall see, the court by its rulings eliminated these issues from the case, decided that plaintiffs had paid $14,000 for the transfers and awarded them judgment in that amount. The questions whether plaintiffs had received more than they had earned and whether their settlement with defendant was, as to her, reasonable and fair were ruled out and no evidence pertaining thereto was received. As we view the case these were the primary issues that had to be determined.

After full discussion of the matter the court stated the issues to be tried as follows:

"(1) How much money was received by the defendant Virginia Velkov from plaintiffs in connection with said transfer from her to plaintiffs?

"(2) Is Virginia Velkov entitled to offsets in the sum of $500.00 and $5,000.00 for alleged loans or advances claimed to have been made by her to the plaintiffs?

"(3) Is Virginia Velkov entitled to an offset in the sum

of $3,500.00 allegedly received by the plaintiffs for her use and benefit?

"(4) Is Virginia Velkov entitled to any offset for costs received by plaintiffs and allegedly unaccounted for?"

It is contended by plaintiffs that defendant agreed that the issues should be thus limited. Defendant contends that she made no such agreement, that it was incumbent upon plaintiffs to establish the entire fairness of their transactions with her and that it was grievous error for the court to eliminate that issue. The record supports the contentions of the defendant. Throughout the trial her attorney insisted that under the established facts a presumption arose that the consent of the defendant in the various transactions was influenced by the trust and confidence which she reposed in plaintiffs and that plaintiffs could not have the benefit of the agreements without producing evidence which would overcome the presumption. Upon numerous occasions the point was argued, with citation of authority. The court consistently ruled against this contention. The issues were not limited by stipulation or agreement. At no time did the court rule that the issues were limited by agreement. The findings recite that they were limited by the court: there is no recital that they were limited by agreement. Plaintiffs' contention upon that point is without merit.

The issues were not limited by the pleadings. The question of the fairness of the transactions and the reasonableness of the charges of plaintiffs were sufficiently pleaded. When plaintiffs agreed to restore the royalties the issues were altered in several respects but the pleadings were not amended. They were, therefore, to be considered according to their substance with respect to the remaining issues. It was not contended by plaintiffs that defendant had pleaded insufficient facts to put in issue the fairness of the settlement. Moreover, defendant did not have to question the fairness of the transactions in order to create an issue. The order of proof respecting enforcibility of the agreement of settlement was reversed because of the presumption that a trustee who gains an advantage in dealing with his beneficiary has made undue use of the confidential relationship.

When plaintiffs brought their action seeking to hold defendant to her agreements with them they assumed the burden which every attorney must bear when he seeks to enforce an agreement with his client which is to his advantage. As said in *Estate of Witt*, 198 Cal. 407, 419 [245 P. 197]: "Not only must the attorney offer clear and satisfactory evi-

dence that the transaction between himself and his client was fair and equitable and no advantage was taken by him, but he must also offer proof that the client was fully informed of all matters relative to the transaction and was so placed as to be able to act understandingly and to deal with the attorney at arm's-length. (*Kisling* v. *Shaw*, 33 Cal. 425 [91 Am.Dec. 644] ; *Cooley* v. *Miller & Lux*, 156 Cal. 510 [105 P. 981] ; *Clark* v. *Millsap*, 197 Cal. 765 [242 P. 918].)''

In the beginning there were two phases of the problem. Plaintiffs made their settlement with defendant on the basis of a contingent arrangement. They were to receive from defendant 25 per cent of whatever she received above the amount of some $55,000. However, they conceded that they were not entitled to retain all the money they had received and also the share of the royalties. But they did claim they were entitled to all the money they had received, and that having paid $14,000 from their own funds, they were entitled to restoration of that amount. It would seem that the turn the case took at the trial removed any question as to the fairness and validity of the contingent fee arrangement. Plaintiffs pleaded that agreement and alleged they had paid defendant $14,000 for the royalties. They thereby effectually conceded that the sums they retained above $14,000, plus the royalties, would give them the compensation to which they were entitled under the agreement. But when they consented to a rescission of the transfer of the royalties it was no longer a question whether they had a right to retain them as a part of their compensation. For all practical purposes the contingent fee agreement could no longer be considered as the basis of a settlement of the dispute; it was effectually abandoned. But there remained the question whether plaintiffs were entitled to restoration of $14,000 and this called for a decision whether they had earned the amount of cash they retained, from which they paid the $14,000. As we have seen that amount was $18,250, less plaintiffs' proper costs and expenses. If they had earned that amount and if the settlement with defendant was otherwise enforcible by them, they were entitled to have $14,000 returned to them when they restored the royalty interests. If they had earned less the difference would be deductible from the $14,000 which they claimed as restitution.

The court made no finding as to the value of plaintiffs' services, having ruled out that issue. For the same reason the court made no finding whether defendant had received in-

dependent advice respecting the settlement and no finding whether it was just and fair as to defendant. There was no evidence as to the value of the royalties received by defendant from Guiberson, which would have been a factor in evaluating the services of plaintiffs. There were findings which negatived the employment of actual fraud, menace or duress by the plaintiffs but there was no allegation or issue to which those findings were responsive.

There was a considerable amount of testimony respecting the arrangement that plaintiffs' compensation would be measured by what she received from Guiberson. Defendant testified that when fees were first discussed plaintiffs asked for the 25 per cent arrangement and that she agreed to it. Plaintiffs testified that defendant insisted upon the arrangement and that they did not agree to it until after the settlement with Guiberson had been agreed upon. All this testimony was irrelevant. Plaintiffs did not base their claim to the money upon that agreement. The only issues to be tried were those which related to the settlement as evidenced by the writings of May 7 and June 8. ■ The primary question was whether plaintiffs had earned all or any part of the $14,000 they paid defendant. The failure of the court to try and determine the question of the fairness of the settlement was due entirely to the avoidance of that issue by the plaintiffs. It is an issue which every attorney must meet when he seeks to enforce a contract for his fees and it is one from which he should not shrink. The judgment must be reversed. The parties should be permitted to amend their pleadings if they so desire.

Any judgment hereafter rendered for restoration of money paid to defendant for an assignment of royalties should declare defendant's right to the royalties that have been impounded and should determine whether plaintiffs are chargeable with the amount of royalties which they have received. The purported appeals from the order denying defendant's motion for new trial and from the order denying her motion to vacate the judgment are dismissed.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied July 6, 1955, and respondents' petition for a hearing by the Supreme Court was denied August 11, 1955. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.