## HAMMER et ux. v. GORDON.

(Court of Appeals of District of Columbia. Submitted May 5, 1920. Decided
June 2, 1920.)

No. 3337.

1. **Attorney and client ☞123(2)—Evidence sufficient to sustain finding of relation.**

   In a suit against an attorney to set aside a conveyance of real estate, evidence *held* sufficient to sustain a finding that plaintiff looked to defendant for advice with respect to such property and the care of it, and that she relied on his judgment, and that the relation of attorney and client existed.

2. **Attorney and client ☞123(2)—Attorney, purchasing property from client, must deal fairly.**

   While the law does not prohibit an attorney from purchasing land from a client, it imposes upon him the duty of dealing fairly with the client in every respect, and the burden is on one who has purchased property from a client to prove that he discharged this duty.

3. **Attorney and client ☞123(2)—Client held entitled to reconveyance of land sold to attorney.**

   A sale of land by a woman to one representing her as an attorney held unfair, so that it should be set aside, where her interest in the property was worth several thousand dollars, and she received only $900 in value.

4. **Cancellation of instruments ☞47—Finding of rental value of property held sustained by evidence.**

   In action against attorney to set aside a conveyance of a house and lot worth $7,000, finding by the court that the use of the premises by the defendant was of the value of $24 a month *held* sustained by the evidence.

Appeal from the Supreme Court of the District of Columbia.

Suit by Isabel J. Gordon against William A. Hammer and wife. Decree for plaintiff, and defendants appeal. Modified and affirmed.

T. L. Heffords and E. C. Dutton, both of Washington, D. C., for appellants.

A. Coulter Wells, W. Parker Jones, and W. H. Holloway, all of Washington, D. C., for appellee.

SMYTH, Chief Justice. Pursuant to a contract Isabel J. Gordon conveyed to William A. Hammer a piece of real estate situated in Washington. Some two months thereafter she instituted this suit against him and his wife, Eleanor Tingley Hammer, in which she prayed that the deed be canceled and the defendants required to reconvey the property to her. From a decree granting the relief sought, the Hammers appeal.

The property in question was valued at about $7,000. At the time of the transfer in June, 1917, it was incumbered with a first trust for $4,500, and a second in the sum of $274.30; also with past-due interest on the trusts and with taxes. It badly needed repairs, and as a result produced net about $10 per month.

Some 9 months before the transfer Mrs. Gordon's husband deserted her and their two minor children, a boy aged 16 and a girl aged 13, leaving them without any means of support, save the $10 a month

rent and what the children could earn. She had no money to pay the interest on the trusts or the taxes. At one time she borrowed $43 from Hammer to pay taxes, giving her piano to him in security. Be·cause of her situation she says she was "under continuous nervous and mental strain and almost distracted."

[1, 2] Hammer was a member of the bar, and occupied desk room in the office of her husband, who was also an attorney at law at the time he deserted her. Hammer knew Gordon's address, which was unknown to Mrs. Gordon; but he failed to disclose it to her. Whenever she or the children desired to communicate with Gordon, they handed their letters to Hammer, who forwarded them. He, according to Mrs. Gordon, directed what she should say in her letters, and censored the children's letter, so as "to see that they did not write anything that would make the father angry." The father answered the children's letters, but always through Hammer. One witness testified that he undertook to secure a second trust loan for Mrs. Gordon for the purpose of taking care of the charges against the property in question, and that he reported to Hammer "as Mrs. Gordon's attorney." She testified that "she consulted Hammer as her attorney, and advised with him and relied on his being faithful to her and her interests at all times in regard to the matters of this suit." He denies that he represented her in any respect. There are circumstances in the evidence tending to support the position of each. The question is a close one, but we think that there is sufficient to sustain a finding that she looked to Hammer for advice with respect to this property and the care of it, and that she relied on his judgment. He is, then, chargeable with all the obligations of such a relation. While the law did not prohibit him from purchasing from her, it imposed upon him the duty of dealing fairly with her in every respect, and the burden is on him to prove that he discharged this duty. Marmion v. McClellan, 11 App. D. C. 467; 6 Corpus Juris, 682; Moran v. Sullivan, 12 App. D. C. 137, and cases there cited.

[3] Hammer knew Mrs. Gordon's unfortunate plight. It is not unreasonable to say that, even if she had business experience, which she did not have, she was not able to exercise prudent judgment under the circumstances. This being so, it was incumbent on Hammer to see to it that every element of the transaction which he had with her was such as an experienced business person would approve. She says that she was to receive $7,000 for the property. Hammer denies it, and produces her written contract in support of his denial; it shows that he was to assume the payment of the trusts and taxes, and pay her $1,500 in monthly payments of $10 each, without interest. He gave her 150 notes in evidence of the debt. Each bore on its face the statement that it was without interest. It would take 12½ years to pay this debt. On a basis of 6 per cent. the then present cash value of the $1,500 would be about $900. The debt was unsecured, either by a trust on the property or otherwise. If Hammer saw fit to sell the property at any time after he had procured title, he could have done so without paying what he owed Mrs. Gordon. True, after Mrs. Gordon demanded a reconveyance, he offered to give her a deed

of trust on the property to secure her; but the deed was not signed by his wife. Such a deed did not satisfy his obligation to her. We think the deal was an unwise one from Mrs. Gordon's standpoint, and that it cannot be considered as fair to her. The court, in setting aside the deed and directing a retransfer of the property to Mrs. Gordon, did not err.

[4] The record shows that Hammer paid $504.44 on account of the second trust, taxes, interest, etc. Against this the court set off the value of the use of the property by him during his occupancy of it for 21 months. It is complained that the use was not worth more than $217, or $10.33 a month. There is evidence that the property at one time rented for $53 a month, but that the cost of repairs brought the net return down to $10.33 a month. What it cost for repairs during Hammer's occupancy does not appear. The property, as we have seen, was valued at about $7,000. The court proceeded upon the theory that the use was worth $24 a month, or $504 for the period. We are not disposed to disturb this finding.

Of the notes given by Hammer, there are 148 still in the possession of Mrs. Gordon. She also has two of his checks, of $10 each. The contract for the sale of the land has not been canceled. The court below assessed costs against Mrs. Hammer, who made no claim to any interest in the property. We believe the decree should be modified, so as to require Mrs. Gordon to deliver the aforementioned notes and checks to Hammer, and the contract to the clerk of the lower court to be canceled, and that Mrs. Hammer should not be charged with costs. As thus modified, the decree is affirmed, at the cost of the appellant William A. Hammer.

Modified and affirmed.