### BAUMGARDNER v. HUDSON.

(Court of Appeals of District of Columbia. Submitted November 15, 1921. Decided January 3, 1922.)

No. 1428.

1. **Patents ⊕ 91(4)—Evidence held to show junior applicant revealed idea to senior applicant.**

In interference proceedings, where it appeared that prior to either application the senior applicant had been the attorney and business associate of the junior applicant, evidence *held* to show that the junior applicant had, during the continuance of the relation between them, revealed the idea underlying the invention to the senior applicant.

2. **Attorney and client ⊕ 125—Patents ⊕ 90(7)—Attorney and associate cannot use information acquired from former client against the client.**

An attorney and business associate of an inventor cannot, even after the termination of the relation, use information revealed to him by client, and claim priority over the client for an invention based on such information, even though the information did not amount to a full disclosure of the invention.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Attorney and client ⊕125—Patents ⊕91 (1)—Attorney has heavy burden to show invention not derived from former client.**

In interference proceedings between a patent attorney and his former client, the attorney has a heavy burden to show that his invention was not based on information derived from the former client, and where he fails to sustain the burden he cannot defeat his client's priority by claiming want of diligence.

Appeal from the Commissioner of Patents.

Interference proceedings between Frank J. Baumgardner and Arthur J. Hudson. From a decision of the Commissioner of Patents awarding priority to Hudson, Baumgardner appeals. Reversed.

Obed C. Billman, of Cleveland, Ohio, for appellant.
A. J. Hudson, of Cleveland, Ohio, for appellee.

VAN ORSDEL, Associate Justice. The issue of this interference is expressed in the following counts:

"1. A rubber article, having incorporated therein and inseparably mixed in the rubber finely ground oyster shells for the purpose described.
"2. As an ingredient of a rubber compound, finely ground oyster shells intimately mixed in the rubber compound.
"3. A new plastic composition, composed of rubber, sulphur, and ground mollusk shells.
"4. As a new composition of matter, a rubber product, including a filler of ground mollusk shells thoroughly incorporated and vulcanized therein.
"5. A new rubber composition, comprising comminuted mollusk shells."

Appellee, Hudson, filed his application April 9, 1917, and appellant, Baumgardner, filed the application in issue November 12, 1917.

It appears that appellant conceived of the use of finely ground oyster shells as a filler for paint and printers' ink; it being a cheap substitute for aluminum hydrate, zinc oxide, white lead, and similar substances used in the manufacture of paints and inks. He accordingly filed an application for a patent for paint containing oyster shell as a filler on July 9, 1915, and an application for a patent for ink containing the same filler April 29, 1915. Hudson acted as his attorney in the preparation and prosecution of these applications.

Appellant testified that in June, 1915, he prepared a sample of the rubber solution containing ground oyster shell, and showed and described it to his son and one Erwin. These witnesses corroborated appellant as to this disclosure, and identified a box containing the solution as the one shown them in 1915. This box, with its contents, is in evidence as "Baumgardner's Exhibit B." Appellant also testified that he disclosed the invention to appellee, Hudson, at that time acting as his attorney in patent matters. In the applications for patents prepared and filed by appellee, appellant used ground oyster shell as the substitute for aluminum hydrate in ink and for white lead in paint.

In November, 1915, a company was incorporated to exploit the Baumgardner patents, known as the Royal Printing Ink Company. This company consisted of Baumgardner, Hudson, and one Hoyt. Appellant was employed by the company for the purpose—

"of developing and perfecting printing inks, colors, and other substances, which utilize a certain base substance, which the said Baumgardner discovered and used generally to originate and perfect printing inks."

Appellant assigned a one-half interest in his patents to Hudson and Hoyt. It therefore appears that at this date appellee held toward appellant the double relation of attorney and business associate. It was shortly after the formation of this company that appellant claims he disclosed the present invention to Hudson and Hoyt. On this point he testified:

"I just told Hudson and Hoyt that it could be used in paper and rubber as a filler, and Hudson said, 'Let that go; we will go through with our printing ink first.'"

This is denied by Hudson and Hoyt. The organization of the company failed through inability to secure the subscription of 10 per cent. of the capital stock as required by law.

Appellee claims to have conceived the invention as the result of hearing a lecture by one Dr. Geer, of the Goodrich Rubber Company. The lecturer, according to appellee, dwelt upon the use of zinc oxide as a filler for rubber, and set forth in some detail the disadvantages connected with its use. He says it was then that the idea occurred to him to substitute ground oyster shell for zinc oxide. Appellee states that he disclosed his idea to Hoyt, and in this he is corroborated by Hoyt. This, together with the denial of any disclosure to him by appellant, constitutes Hudson's case.

[1] Priority of invention in this instance depends largely upon the issue of originality, growing out of the fiduciary relation which appellee bore to appellant. We think the circumstances establish that appellant revealed his idea of the use of oyster shell as a filler for paper and rubber to Hudson and Hoyt, as set forth in his testimony. It is undenied that at about the same time he made a disclosure to his son and the witness Erwin. This shows that he had a conception of the invention of the issue. Baumgardner, Hudson, and Hoyt had organized a company to promote the development of the use of oyster shell as a filler. It was but natural that appellant, having the conception, should make the remark to his associates, as testified to by him. It may be that the remark was not sufficient to constitute a full disclosure, but it was a suggestion of the use of oyster shell as a filler for rubber. Appellant is further corroborated by the fact that he subsequently filed an application for a patent for oyster shell as a filler for paper before appellee came into the field.

The suggestion of its use for rubber may or may not have made an impression on appellee, but when he heard the Geer lecture he would naturally have been impressed with the practicability of the suggestion of appellant. It was then that he, acting upon the suggestion, the value of which had been made clear by the difficulties Geer was seeking to overcome, rushed into the Patent Office with his application.

[2] We think, therefore, appellee is not in position to avail himself of the subject-matter of this invention, which belonged originally to appellant. Oyster shell as a filler substitute for more expensive substances in paint, ink, and products requiring the use of a filler, such as

white lead for paint, aluminum hydrate for ink, and zinc oxide for rubber, was the sole discovery of appellant. The fact that appellee, at the time he claims to have conceived the idea of using oyster shell as a filler for rubber, no longer occupied the relation to appellant of attorney or business associate (unless the assignment of one-half interest in the Baumgardner patents still existed) is beside the case, since the information which enabled him to apply it to rubber was acquired in his fiduciary capacity.

We do not agree with the Board of Examiners in Chief that the case is "one of straight priority of invention," and that "the two ideas of use are entirely different, and knowledge of one is not suggestive of the other." The whole invention consists in substituting oyster shell for zinc oxide, and without the knowledge derived in a fiduciary capacity of the use of oyster shell as a filler for materials where a substance of that character is essential, appellee does not pretend that his conception would have been possible. It therefore follows that the information he had derived from appellant logically suggested the idea which he now seeks to exalt to the dignity of inventive conception. An attorney cannot avail himself of information thus acquired, to the damage of his client, though the relation of attorney and client has ceased.

Assuming that appellant's suggestion to Hudson and Hoyt did not amount to a disclosure of the invention in issue, but merely of the use to which oyster shell as a filler might be put, this would not be sufficient, in the peculiar circumstances of this case, to establish appellee's status as the original inventor. The knowledge which enabled him, after hearing the Geer lecture, to form an inventive conception, was derived from his client while the fiduciary relation of attorney and client existed. Consequently the opportunity to improve on his client's discovery, even to the limited extent here disclosed, was not open to appropriation by him. In a case involving the relation of partners (Milton v. Kingsley, 7 App. D. C. 531), Mr. Justice Morris, speaking for the court, said:

"It might be a question under some circumstances whether the employee or person in a fiduciary relation to the original inventor should not be regarded in a technical sense under the terms of the law as being entitled to have letters patent issued to him in his own name for improvements devised by him, subject to the processes of equity to compel an immediate assignment thereof to the original inventor. But we understand the jurisdiction of this court in the premises to be of an equitable as well as of a purely legal and technical character, and that circuitous course, under the circumstances, would seem to be wholly unnecessary."

[3] In a case of this sort, the burden is heavily upon the attorney to show, not only priority, but that his conception of the invention was in no way the result of confidential knowledge derived from his client. Overholt v. Matthews, 48 App. D. C. 482. Here the case turns chiefly upon the question of originality, and we are of the opinion that appellee, at a time when the relation of attorney and client existed, derived the information from appellant which enabled him subsequently to conceive the invention in issue. The relation of an attorney to his client is too sacred to admit of even the shadow of abuse. Courts will

not only closely scrutinize such transactions, but will resolve every doubt in favor of a client whose confidence has thus been betrayed.

Inasmuch as appellee is not an independent inventor, it is unnecessary to consider whether the information which appellant imparted to him in 1915 was sufficiently clear to amount to a disclosure of the invention of the issue. It was of such a nature that appellee, owing to the fiduciary relation which he occupied, was not at liberty, then or in the future, to use it to appellant's disadvantage. For the same reason the question of appellant's diligence at and immediately before appellee entered the field need not be considered.

The decision of the Commissioner of Patents is reversed.

Reversed.