### GOODRUM v. CLEMENT.

(Court of Appeals of District of Columbia. Submitted November 17, 1921. Decided January 3, 1922.)

Nos. 1441-1444.

Appeal from a Decision of the Commissioner of Patents.
Dissenting opinion.
For majority opinion, see —— App. D. C. ——, 277 Fed. 586.

J. G. Roberts and G. Willard Rich, both of New York City, and Charles C. Bulkley, of Chicago, Ill., for Goodrum.

Horace A. Dodge, of Washington, D. C., and W. G. McKnight, of New York City, for Clement.

Thomas H. Ferguson and Curtis B. Camp, both of Chicago, Ill., for Webster.

SMYTH, Chief Justice (dissenting in part). I dissent from the decision in all the cases, except No. 1444. As I view it, the law of attorney and client has no application whatever. Clement undoubtedly was Goodrum's attorney at the time of the Atlantic City interview, but that is immaterial. If it was established that Goodrum had conveyed something to him, and now questioned the conveyance on the ground that it was unfair, the burden would be undoubtedly on Clement to establish the justice of the transaction. Kisling v. Shaw, 33 Cal. 425, 91 Am. Dec. 644; Hammer v. Gordon, 50 App. D. C. 34, 267 Fed. 336. But that is not the case. Clement denies that Goodrum conveyed anything to him. Goodrum asserts that he communicated the invention. The burden is on him to establish his assertion. Surely it cannot be the law that, if a client claims he loaned his attorney $100, and the attorney denies it, the burden is on the latter to prove he did not receive it.

The court holds that Goodrum communicated the basic idea of the invention to Clement during the Atlantic City interview. Counsel for Goodrum says he communicated to him only the germ of the invention.

In his testimony Goodrum differs with both, and asserts that he was then in possession of the full invention, and in proof of his assertion produces Exhibit 4, which describes the invention of the issue in detail, and which, he testified, shows what he disclosed to Clement at the interview. Who is right?

Much is said about the words "quick and slow," written near the relays marked X and Y of Figure 3 of the "grandfather case," as indicating that Goodrum possessed the invention at Atlantic City. They have no tendency to establish this. The Assistant Commissioner found that the relays are not used in a two-wire metallic circuit for any such purpose as is contemplated by the counts of the issue; that they were not illustrated in an operative relationship in that case; that the application was later amended by removing the words altogether and changing the circuit control by the armature of the relay Y from a normally closed to a normally open condition; and that their purpose in the grandfather case was to disclose an invention of Goodrum's described in the testimony of Dunbar appearing in the Webster record.

The Board of Examiners in Chief held that Goodrum's testimony that the relay features were inserted in the grandfather case for the purposes stated by him "seems absurd," and rejected it as utterly untenable. According to the Examiner of Interferences, the relays, although they were found to be inoperative in that case, were not added to it regardless of their relation to the system then disclosed, but that Clement had reason for believing that they were a necessary part of the disclosure, and concluded by saying that, if Goodrum disclosed anything to Clement at the Atlantic City interview relating to the invention in issue, it was not a "usable idea."

Thus we have the three tribunals concurring in the opinion that nothing which could be made use of was revealed by Goodrum to Clement at that time. We are dealing with a highly technical art, and where that is true the conclusions reached by the experts of the Patent Office should not be disturbed, except for the gravest reason. Creveling v. Jepson, 47 App. D. C. 597; Reid v. Kitselman, 49 App. D. C. 377, 266 Fed. 255; Blaine v. White, 50 App. D. C. 38, 267 Fed. 340. I am not willing to substitute my judgment for theirs upon the showing made.

It is said that John and Charles Erickson testified that Goodrum was in possession of the invention at Atlantic City, but I do not so understand the testimony. John Erickson testified that in the summer of 1904, as near as he could remember, Goodrum, upon learning from him that he was making a slow-acting relay, looked at it and said "that he had worked out a two-wire system, and that these relays would come in very handy on that," but that he (Goodrum) did not disclose to him the operation of his system—merely told him that he had a system that required only two wires.

Charles Erickson said that in the summer of 1904 he showed Goodrum a relay, concerning which he remarked, "This gives me an idea on a two-wire system;" that Goodrum made a sketch of his idea, which showed a selector circuit, complete and operative, as near as he could see; that Goodrum, when he left the laboratory, took the sketch with him, and that Erickson did not see it afterwards. He then described

279 F.—20

in great detail the circuits which Goodrum had disclosed, but, strange to say, Goodrum does not allege any disclosure to Charles Erickson. On the contrary, he testified that he had no recollection of disclosing the invention to any member of the Automatic Electric Company, of which Charles Erickson was one, except Keith. Twelve or thirteen years had elapsed between the time that Erickson says he discussed the invention with Goodrum, yet he assumed to give the details of the circuits as if the matter had happened the day before. When I consider this fact in connection with the other one, that Goodrum does not claim to have made any disclosure to Erickson, I find no difficulty in agreeing with the Examiners in Chief that Charles Erickson's testimony is not entitled to very much weight.

Shortly after the Atlantic City interview arrangements were made for a conference between Goodrum and Kellogg, with a view to his selling all his inventions to the latter. At the conference were present, in addition to Kellogg and Goodrum, Lattig, Clement, Hoge, Dunbar, and Dunham. Negotiations lasted for nearly a week. It was arranged that Goodrum was to disclose all his inventions to Dunbar. He did so, or pretended to do so. Dunbar says that Goodrum explained in detail "the improvements or inventions which he claimed to have made in the art of automatic telephony," and "fully disclosed to him [Kellogg] and to me all of the inventions and improvements" which he, or he and Lattig, had made or claimed to have made. But he did not disclose "a two-wire telephone exchange system," such as is involved in this interference. In this Dunbar is supported by Hoge and Dunham, the latter saying, "There was nothing said at any of the conferences relative to such a system."

The negotiations fell through, and Goodrum and Lattig soon thereafter made a deal with Stromberg-Carlson Company. One Miller was selected to receive from them full disclosures of all of their inventions for the purpose of reporting to the company. Miller said that neither Goodrum nor Lattig made to him any "mention or suggestion of such a system" as the one here involved. Goodrum admits that he did not make the disclosure, but explains that he withheld it because he feared if he did not he would prevent the sale of other inventions which he had; in other words, that he deceived Miller into believing that he had disclosed all his inventions while in fact he had not. This should not commend him to those who must weigh his testimony against that of others.

Letters written by Goodrum taken in connection with his testimony concerning Exhibit 4 furnish what I regard as most complete proof that he did not have the invention at the time the grandfather application was prepared. Reference has heretofore been made to this exhibit. It is a complete statement of the invention of the issue. Goodrum says it is a true reflex of what he had at Atlantic City in 1904. If it is, then he had the invention at that time. Yet on June 6, 1905, we find him writing to his friend Dunham the following:

"I have been trying to devise an automatic without ground, and have thought it out this way. Consider same, and see if you can get it on paper."

Is it not very strange that, if he had the full invention in August, 1904, at Atlantic City, nearly a year before he wrote this letter, he should have written such a letter? The letter is entirely inconsistent with the idea that he had the invention in 1904. Even a letter of his to Clement, February 16, 1906, is proof against his contention. In it he said:

"I thought it would be of interest to you to know I have finished my drawing of the metallic circuit system using only the two wires and no ground. * * * The new two-wire system will reach you in a very few days through the regular channel."

Here he speaks as if he was imparting something new to Clement. None the less he argues that a year and a half before he had disclosed the same system to him.

Goodrum says that he disclosed the invention to Conner, Keith, Hayes, Lattig, Clement, and Dunham. The first three he did not call. Clement denies positively that he ever disclosed to him. Dunham denies that he disclosed in 1904, the year of the Atlantic City conference, and Lattig was unable to describe any circuits embodying the invention, or any means for putting the invention into practice. Consequently there is no proof that what Lattig saw is identical with the invention of the issue. Goodrum's testimony, therefore, consists solely of his unsupported recollection of what took place at Atlantic City about 13 years before the time he gave it. Oral testimony given under such circumstances is "peculiarly untrustworthy." Deering v. Winona Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153. Repeatedly has this court spoken to the same effect. Hisey v. Peters, 6 App. D. C. 68; Mergenthaler v. Scudder, 11 App. D. C. 264; Tyler v. St. Amand, 17 App. D. C. 464. Yet it is upon this character of testimony that we are asked to say that the three tribunals of the Patent Office are clearly wrong, and to brand an attorney as one who has violated his professional honor.

I do not think it should be done.