Geaham:, Presiding Judge,
delivered the opinion of the court:
The United States Patent Office declared an interference between patent No. 1576548, issued to the appellant’s decedent, Jacob J. .Reusch, and a pending application of the appellee, Ploward L. Fischer, Serial No. 659966, which was filed August 29, 1923. The Reusch patent was issued March 16, 1926, on an application filed August 4, 1924.
The subject matter of the interference is set .forth in one count, which is as follows:
In apparatus of the class described, the combination with a casing adapted to contain stencil plates, of a gauge bar adapted to be held in rigid spaced relation with the front of said casing to engage a card to be printed, said bar having a surface adapted to constitute a guide for a stencil in use, and moans on said bar adapted to facilitate centering cards beneath said bar.
Both parties took evidence. The examiner of interferences awarded jn’iority of the subject matter to Reusch, the junior party, and in so doing filed an enlightening and well-considered decision. He based his conclusion, in principal part, on the fiduciary relations which he found to exist between Fischer and Reusch as attorney and client. On appeal to the Board .of Appeals the examiner’s decision was reversed, the board finding that there was no unethical conduct or breach of trust on the part of Fischer; that he was the original inventor of the subject matter of the interference, and awarding priority to him.
The matter now comes to us on the issue of originality. Appellant contends that Reusch conceived the invention in issue, employed Fischer as his attorney to prosecute an application ,for a, patent thereon, and made a full disclosure to him thereof; that Fischer thereafter appropriated this idea and filed an application for a patent thereon contrary to the terms of his employment, and contrary to the ethical rules which should have controlled his actions as the attorney for Reusch; that he, Reusch, was the inventor of the particular subject matter of the controversy, and conceived and disclosed the same fully before Fischer entered the field; that he proceeded with due diligence after Fischer’s entry, and that appellant is justly entitled to priority herein.
On the other hand, Fischer maintains that he never was consulted by Reusch about the subject matter of the invention here; that he conceived the same before he conferred with Reusch on the other matters hereinafter mentioned; that Reusch ne^er disclosed the sub *1359 ject matter of the invention here in issue to him at any time, and that he was the inventor thereof, filed his application in due course, and is entitled to priority.
The decision of the issue herein depends largely upon the facts presented by the record, and involves, to a large degree, the question o,f the veracity of the various witnesses who were called. On this point we do not have the concurring decisions of the tribunals of the Patent Office, with the presumption which arises therefrom.
Reusch testified that he was employed by the Louis F. Dow Co., as advertising and sales promotion manager in 1919, and at that time used what is described in the record as the Pokorny stenciling apparatus in his work; that on July 13, 1922, having attracted the attention of some of the stockholders in the National Sign & Stencil Co., he was employed as the general manager of that company. This was a small business and it was marketing, at that time, the said Pokorny stenciling apparatus, consisting of a wooden case of a horizontal type, with a drawer for holding stencils, and compartments for brushes, ink, etc., on the top, which was at that time being manufactured by the Wallin Manufacturing Co.; that shortly after his employment by the National Sign & Stencil Co. he conceived the invention in issue, and disclosed it to various employees of the company; that he applied to Wallin, who was then making the Pokorny outfits, and was referred to Fischer as a patent attorney, and that he disclosed fully to Fischer in the fall of 1922, the invention here in issue, furnishing him with drawings on or about March 20, 1923, which drawings, although requested, were never returned to him, and full information about how he desired the application to be made and the samples to be constructed; that from that time until the fall of 1923, he was continually attempting to get Fischer to proceed, without success; that he was told by Fischer, in the fail of 1923, that he, Fischer, had filed the application in his own name, and then vigorously protested against this; that he also, in a directors meeting of the National Sign <& Stencil Co., in October of the same year, protested against this action, insisting upon the invention being credited to him; that when he first went into the National Sign & Stencil Co., the members of the Hickey family were not active in its management and paid very little attention to'its business; that after his difficulties with Fischer began in the fall of 1923, Fischer came in constant contact with members of the Hickey family and established close relations with them; that at about the same time, there began to be friction between Reusch and the members of the Hickey family; that when he first took charge of the National Sign & Stencil Co.’s business, the-cabinets were being made by Fischer’s company, the Wallin Manufacturing Co., of which the *1360 party Fischer was then president, but that afterwards, because of his-belief that manufacturing could not be carried out fast enough at this place, he directed the manufacture of the cabinets to be done-elsewhere; that on September 8, 1923, Fischer was elected a director of the National Sign t% Stencil Co., and that, on March 17, 1924, at an adjourned meeting of said company held at the office of Carl Cummins, an attorney of St. Paul, Reusch was discharged as general manager; that at the time he employed Fischer, Fischer gave-no indication that he was working upon any patents in connection with a stenciling device or outfit, and that he had no idea Fischer-claimed anything of the kind until after the application was filed and the altercation occurred between the parties, as hereinbefore-referred to.
The party Fischer testified in substance that he was admitted to. practice before the Patent Office, but was not a member of the-general bar; that he conceived the invention in issue about January 1, 1923,' and that he thereafter disclosed the same to Reusch. He-admits he was employed by Reusch on the recommendation of Wallin, but he states that this employment only included the preparation of an abstract of title of the Pokorny patent, a copyright matter, and an application which Reusch was making for a patent on improvements in the Pokorny device, and that Reusch never, at any time, disclosed to him the invention here in issue; that his relations with Reusch had always been amicable, and that he had had no. difficulty with him at any time in the office of the National Sign & Stencil Co., or otherwise, about the invention here in issue; that he is the inventor of the device in question, and that after he conceived it, he took the matter up with the members of the Hickey family and discussed it with them on numerous occasions, and finally, when the application was filed, assigned it to Agnes Hickey, who, at that time, paid him his fee for the. same — $150. He further testified that he had never known the members of the Hickey family until the matter of this patent arose,'and that he was elected a director of that company upon receipt of the transfer of one share of stock from Agnes Hicke}^; that Reusch never protested at any meeting of the directors of the National Sign &■ Stencil Co. about the patent being-taken out in Fischer’s name, and that no fiduciary relation existed between himself and Reusch, as attorney and client, as to the particular matter here in controversy.
In attempting to arrive at the truth of this matter, the- court finds it necessary to rely upon facts and circumstances detailed by witnesses not parties in interest. On the part of Reusch these- witnesses are: Paul Cyr, a foreman in the shipping department of the National Sign & Stencil Co. during the time Mr. Reusch was manager *1361 thereof; Sister Barbara Anne, formerly Miss Marie Mitsch, now •a nun, but employed as a stenographer in the office of the National Sign & Stencil Co. during Mr. Reusch’s incumbency as manager; Frank H. Tuttle, a bookeeper and auditor employed at the National Sign & Stencil Co. during Mr. Reusch’s incumbency; Raymond D. Spellman, who had office space in the office of the National Sign & Stencil Co. during the same period; and Alexander S. T. Lagaard, .a former law partner of the appellee Fischer.
Fischer relies principally for corroboration on the members of the Hickey family, who were the principal stockholders and owners of the National Sign & Stencil Co. These consisted of George B. Hickey, Miss Agnes Hickey, and Mrs. Mae C. McClure. The business of this company had been owned by James R. Hickey, who had died on November 16, 1919, leaving Agnes Hickey his devisee as to the business and assets of the company. The Hickey family,'at the time Reusch was employed in this business, owned the major portion of the stock of this company, some amount being outstanding in the hands of the original owners of the Pokorny patent. When Reusch was made manager he was also created a director and given one share of stock.
The witness Cyr stated that he began work for the National Sign & Stencil Co. in September, 1922, and that within a few months after he began work there, Reusch described an improvement in the Pokorny outfit which he intended to have made, and which was a vertical cabinet with a drop door and with its arrangement such as is the subject matter of the controversy here. The witness fixes.the time definitely as the winter of 1922 and 1923 when this disclosure was made to him. At that time, he says, and .on numerous other occasions, Reusch made rough pencil sketches which he showed to the witness, embodying the idea of the invention.
The witness Sister Barbara Anne began to work for the National Sign & Stencil Co. in August, 1922. She states that within three or four months after she began to work there, she saw Mr. Fischer at the place talking to Reusch, and on numerous occasions after that, in that year, these parties conversed in the office of the National Sign & Stencil Co., where she could observe them, she being at that time .a stenographer, with a desk in the office where it y?as possible for her to observe what occurred. She recalls that she heard a controversy between Reusch and Fischer some time in the latter part of the year 1923,- at the office, in which Fischer stated that he had signed a certain “ patent,” and in which Reusch was objecting vigorously and insisting that he should sign it, and that he, Reusch, was the inventor of the device. She fully corroborates, by her testimony, Reusch’s statement of this conversation. Sister Barbara Anne also gathered *1362 from tlie conversation, according to her testimony, that the device in question was the device the subject of controversy here, of the “ suit case” type. Soon after Reusch was discharged from the National Sign <& Stencil Co., Sister Barbara Anne also severed her relations with this company, because of difficulties which occurred between her and Mrs. McClure, one of the stockholders.
The witness Tuttle testified that he began to work for the National Sign & Stencil Co. in August, 1922, and that about the 1st of Sexitember- of that year Reusch explained an improvement in stencil cabinets to him which was substantially the device in controversy here. He states that numerous conversations occurred between him and Reusch as they went back and forth to and from the office, as well as in the office and at other places, and that Reusch made rough drawings when he was explaining the same to the witness. This witness identifies fully the device which was finally perfected, and a sample of which was afterwards made and brought to the office of the National Sign & Stencil Co. He also relates that Reusch informed him of his employment of Fischer to obtain a patent on this invention, and that Reusch afterwards told him with considerable excitement that Fischer was attempting to obtain the patent in his own name. This witness on the stand made a sketch from his memory of the disclosures made to him by Reusch in 1922, and which sketch is in evidence, and plainly indicates the basic ideas of the invention in controversy.
The witness Spellman testified that he had a desk in the office of the National Sign & Stencil Co. in such a position that he could see what occurred therein, and that he frequently saw Fischer there in conference with Reusch in 1922 and 1923. Fie stated that he became aware of a bitter feeling between Reusch and Fischer by hearing them argue excitedly about some matter; that one conversation in the fall of 1923 concerned the Avay Fischer was conducting Reusch’s patent business; that he saw these two parties going over the plans, and at one time took a model to Fischer’s office; that one time Reusch told the witness, in explanation of these controversies with Fischer, that he was to have received certain papers which he never had received from Fischer. The witness also stated that within six months after he moved into the office of the National Sign & Stencil Co., which was in July, 1922, Reusch told him of his new invention in stenciling outfits which he had invented and a model of which he had then ordered. The witness, on cross-examination, fixed the time of the conversation in which Reusch was claiming the right to sign the patent application at approximately September or October, 1923.
*1363 Alexander S. T. Lagaard testified that at the time of the employment of Fischer by Reusch, he, Lagaard, was in partnership with Fischer, which partnership afterwards became a corporation. This association continued from January, 1921, to June 1, 1924. The witness testified that in the early-part of 1923, not later than Ajml, Fischer showed him a drawing of a stenciling apparatus which was of the suit-case type, and was approximately the invention in question here, and asked him for assistance in planning a metal clamp to be used upon this device. The witness testified that Fischer never claimed to him that he invented this device other than the clamp just referred to, but did state that he .had received instructions from Reusch about the invention. Fischer indicated to him at first that the feelings between himself and Reusch were friendly, but afterwards demonstrated, by his actions, that they had become unfriendly, and in some of the conversations of a later date stated that Reusch had not been dealing fairly with the National Sign & Stencil Co.. He testified that his firm obtained a copyright for Reusch on certain stencils and did some other patent work prior to the work on the particular invention here in controversy. He further states that after the time when difficulties were arising between Fischer and Reusch, Fischer and he discussed the question as to whether the invention here in issue was to go to the National Sign & Stencil Co. or to Reusch individually, but that Fischer prepared the application and had the drawings made in his own name, without protest on the part of the witness Lagaard.
The various members of the Hickey family, stockholders of the National Sign c% Stencil Co., corroborate Fischer to this extent, that they all testify that Reusch at no time made any claims or statements to them as to his being the inventor of the device in question.
One or two other circumstances appear from the evidence to have some bearing on the issue here involved. When Reusch was first appointed general manager of the National Sign & Stencil Co., he placed an order with Fischer’s company, the Wallin Manufacturing Co., for the making of the Pokorny cabinets, which Reusch’s company was then selling. Sometime during the summer of 1923, Reusch transferred the business of making these cabinets to a cabinet maker by the name of Schmidt, with whom apparently this business was conducted until Reusch’s discharge, when the business was replaced with Fischer’s company.
It also appears that the application which Reusch filed for his improvements upon the Pokorny cabinet, and which duly went to patent, was promptly prosecuted by Fischer, was assigned by Reusch to the National Sign &*Stencil Co., and was paid for out of the treasury of the National Sign & Stencil Co. The Fischer appli *1364 cation, for the new model cabinet, however, was assigned to Agnes Hickey and paid for by her personal check.
It also appears that during Reusch’s incumbency as general manager, approximately $8,000 was taken out of the funds of the National Sign & Stencil Co., and paid to original stockholders in the Pokorny Co. for stock owned by them, and that this stock was assigned not to the National Sign & Stencil Co., but to Agnes Hickey personally. Difficulty arose between Reusch and the members of the Hickey family because of Reusch’s insistence that this amount be carried as a charge on the books of the company against Agnes Hickey.
The fiduciary relations between an attorney and his client are of such a nature that the courts have, universally, adhered to the rule that such relation will be closely scrutinized, to the end that the attorney may take no personal advantage at the expense of his client as a result of the confidential relations existing between them. No trust is more complete than that placed by the client with his attorney, and no trust should be more carefully and faithfully observed. The relation of - attorney and client, admittedly, existed between Fischer and Reusch in patent matters obviously akin to that here in issue. This being true, the burden devolved upon Fischer to prove the utmost good faith upon his part, and to establish clearly that he, and not Reusch, was the inventor of the subject matter of this interference. If, after considering all the facts, there remains any doubt as to the originality of the invention, such doubt should be resolved in favor of the client. Goodrum v. Clement, 51 App. D. C. 184, 277 Fed. 586; Overholt v. Matthews, 48 App. D. C. 482; Baumgardner v. Hudson, 277 Fed. 552.
Not only is this true, but if, during such employment, the attorney or other person employed makes valuable discoveries ancillary to the plan disclosed by the employer, such suggested improvements are the property of the employer and not of the employee. Agawam Co. v. Jordan, 7 Wall. 583, 602; Milton v. Kingsley, 7 App. D. C. 531; Fritz v. Hawn, 17 C. C. P. A. (Patents) 796, 37 F. (2d) 430..
We are satisfied, from the facts appearing from this record, that, applying the legal principles just stated, Reusch should be considered as the inventor of the device in issue. All the incidental facts in the record lead the mind to the conclusion that he suggested the basic idea thereof to Fischer. Reusch disclosed this idea and his invention fully to employees of his company before he conferred with Fischer. On the contrary, there is no evidence in the record to even indicate that Fischer had this conception before he met and conferred with Reusch. The early pleasant, and afterwards .strained, relations between Fischer and Reusch, denied by Fischer, *1365 but fully substantiated by other credible witnesses, corroborate Reusch. Fischer’s statements to his law partner, Lagaarcl, in which he was debating whether Reusch or the National Sign & Stencil Co. should obtain the patent, are illuminating.
Other facts also reflect light on the relations of the parties and upon Fischer’s procedure. When Fischer first interviewed Reusch,. •Reusch was on friendly relations with the stockholders of his company, who were inactive in the business; Fischer’s Wallin Co. was making the cabinets and whatever profit arose from this business; Fischer had no business relations with any of the Hickey family. However, when Fischer first began to plan to file an application in his own name, he became quite intimate with the Hickey family. He assigned his application to Agnes Hickey. Thereupon there was great activity in the company affairs by the members of the Hickey family. The company elected Fischer a director; it discharged Reusch; it again placed its cabinet business with Fischer’s company. Reusch did not ascertain until long after the Fischer application had been made that such action had been taken. The assignment being to Agnes Hickey direct, no record of the same would come to the notice of Reusch, as general manager of the National Sign & Stencil Co.
Every one of these circumstances seems to indicate a carefully carried out plan to secure the benefit of Reusch’s invention to Fischer and the members of the Hickey family. The most charitable thing that may be said, in view of the facts appearing upon this record, is that the testimony entirely fails to support the burden cast upon the party Fischer herein.
The decision of the Board of Appeals is reversed and priority will be awarded to the appellant.